IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT
CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, STEVENS, JJ.

| IN THE INTEREST OF: D.C.D., MINOR | : No. 56 MAP 2014 |
| | : |
| | : |
| | : Appeal from the order of the Superior |
| APPEAL OF: CLINTON COUNTY | : Court dated April 23, 2014 at No. 1484 |
| CHILDREN AND YOUTH SERVICES | : MDA 2013 which reversed the Decree of |
| | : the Clinton County Court of Common |
| | : Pleas, Orphans Division, dated July 23, |
| | : 2013 at No. 12-2012. |
| | : |
| | : SUBMITTED: July 29, 2014 |

## OPINION

MR. JUSTICE BAER                              DECIDED: December 15, 2014

In this children's fast-track appeal, we consider the decision of the Superior Court

holding that a termination of parental rights petition filed by a children and youth

services agency must be denied if the agency failed to employ "reasonable efforts" to

reunify a child with her parent. As discussed below, while there are remedies available

to a court faced with an agency which is not providing reasonable efforts, refusing a

properly proven termination of parental rights petition, and thus harming an innocent

child, is not among them. Accordingly, we reverse the order of the Superior Court and

reinstate the trial court's decision terminating father's parental rights.

D.C.D. ("Child") was born on March 31, 2011, to C.Y.D. ("Mother") and J.T.W.

("Father"). Clinton County Children and Youth Services ("CYS") took custody of Child

the following day because she suffered medical problems as a result of Mother's drug

use, presumably during her pregnancy. Although she was placed briefly with maternal relatives and another foster family, Child has lived most of her life with her current foster family. The trial court found that she has bonded with this family, who is willing to adopt her.

At the time of Child's initial placement, the identity of the Child's father was uncertain, but it was later confirmed following paternity testing in May 2011. Continuously since Child's birth, Father has been incarcerated, serving an aggregate sentence of 93 to 192 months (7 3/4 to 16 years) of imprisonment, with a minimum release date of July 15, 2018, and a maximum date of October 15, 2026.[1] Although originally incarcerated at the Lycoming County Correctional Facility, Father was placed briefly through the Pennsylvania Department of Corrections in a correctional facility in Virginia for several months, before being transferred to the State Correctional Institution ("SCI") at Graterford in March 2012.

In May 2012, CYS filed its first petition to terminate Mother and Father's parental rights. Although ultimately denying termination as to both Mother and Father's parental rights, the trial court found that grounds existed upon which Mother's rights could be terminated because she had minimal contact with Child and had refused to perform parental duties. In regard to Father, the trial court observed that he had attempted to establish a relationship with Child by seeking video and in-person visits, sending gifts and cards, and corresponding with the caseworkers regularly.

---

[1] Father's aggregate sentence is based upon three consecutive sentences for convictions for possession of a firearm, delivery of controlled substances, and flight to avoid apprehension.

The court, however, found that CYS "failed to assist Father" with his efforts to establish a relationship with Child. Tr. Ct. Op., June 21, 2012, at 10. After chiding CYS for essentially pursuing only adoption despite the court-ordered goal of reunification or placement with relatives, the court made the following observational warning: "If the Agency does not work toward these goals, this Court may find the Agency did not use reasonable efforts to finalize the child's permanency plan. This finding would result in the loss of thousands of dollars of funding payable to the Agency for this child."[2] Id. at 11. The court then determined that CYS had not established any grounds for termination of Father's parental rights as of June 2012. Despite finding that a basis to terminate Mother's rights existed, the court concluded that it would be "inappropriate" to terminate Mother's parental rights when grounds did not also exist to terminate Father's rights. Id. at 12. Accordingly, the court denied CYS's petitions to terminate Mother and Father's parental rights.

---

[2] The court, nonetheless, checked the box on the June 21, 2012 Permanency Review Order indicating that CYS had provided "reasonable efforts." We recognize and even commend the trial court for its measured response. As noted in the Pennsylvania Dependency Benchbook, trial courts "are encouraged to communicate clear expectations to the agency" given that a finding that reasonable efforts are lacking will have a "significant impact on the financial resources available to assist children and their families." Pennsylvania Court's Office of Children and Families in the Courts, Pennsylvania Dependency Benchbook, § 15.8.1 at 182 (2010).

Subsequently, the court changed the permanency goal from reunification to adoption in May 2013. Notes of Testimony ("N.T."), July 10, 2013, at 4. We remind all involved with this genre of cases that federal and state law allows for and, under the circumstances here presented, arguably calls for concurrent planning. See In re Adoption of S.E.G., 901 A.2d 1017, 1018 (Pa. 2006). If CYS had followed this dual track, it would have previously satisfied the presiding trial judge and avoided the difficulties and delays leading to this appeal.

CYS appealed the denial of termination of Mother and Father's parental rights to the Superior Court, which affirmed the denial of termination as to Father's rights, but reversed the trial court's decision regarding Mother's rights and remanded this issue to the trial court with instructions. Upon remand, the trial court terminated Mother's parental rights on April 23, 2013.

Three days later, on April 26, 2013, CYS filed a second petition to terminate Father's parental rights based upon 23 Pa.C.S. § 2511(a)(2):

> (a) General rule. - The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

Id. CYS also asserted that termination of parental rights would be in Child's best interest pursuant to Section 2511(b), see infra at 17.

At a hearing on the termination petition, Father executed a consent to adopt, only to revoke it two weeks later. At a second hearing on the petition, CYS presented evidence that Father's only contacts with Child had been a video visit in January 2012, two brief in-person visits after court proceedings in November 2012 and February 2013, and an in-person visit of Child to SCI Graterford in April 2013. The trial court observed

that the dearth of visits between Father and Child was inconsistent with the trial court's prior instructions to CYS to permit visitation at the prison.[3]

Indeed, the court found that the April in-person visit was "arranged for litigation purposes" to enable CYS to demonstrate Child's lack of a bond with Father for purposes of the termination petition, which CYS filed days after the visit. Tr. Ct. Op., July 23, 2013, at 5. Apparently, the visit was flawed from the beginning given that the CYS caseworkers accompanying Child to the visitation arrived late within the prison visitation timeframe and the caseworker that knew Child best was not able to accompany her to the visitation area due to inappropriate clothing. Id. at 6. Moreover, Child, who was then two years old, was tired after the three-hour drive to the correction facility.

The trial court recognized that notwithstanding these impediments and CYS's seeming disinterest in following the trial court's directives regarding establishment of a Father-Child relationship, Father had inquired regarding Child, corresponded with and received photos from Child's foster parents, and generally tried to be a part of Child's life.[4] Given the trial court's view of the agency's conduct, it had "little difficulty restating what it said in its June 21, 2012 Opinion that 'the Agency has simply failed to assist Father.[']" Id. at 7.

Nevertheless, the court held that "Father and [C]hild have no bond." Id. at 8. Moreover, the court observed that Father has never been able to provide essential

---

[3] Although the trial court had ordered video visits, Father was only able to have one such visit. After the Virginia facility arranged one video visit, Father was placed in "segregation" in the facility, which resulted in the cessation of video visits. Tr. Ct. Op., June 21, 2012, at 6. Additionally, Father was unable to have additional video visits because SCI Graterford did not have the capability.

[4] The trial court indicated that Father has not had his rights terminated in regard to any of his other five children.

parental care, control or subsistence necessary for Child's well-being due to his incarceration. It recognized that Father's incapacity would continue until at least his minimum sentence date of July 2018, when Child would be seven years old and have lived virtually all of her life with her foster family, and could be delayed until his maximum release date of October 2026, when Child would be fifteen.

Acknowledging this Court's recent decision in In re Adoption of S.P., 47 A.3d 817 (Pa. 2012), holding that incarceration can be relevant to determining a parent's incapacity to care for a child, the trial court opined that Father was "incapable at the present time of providing essential parental care, control or subsistence necessary for the child's physical or mental well-being" and that Father will be unable to remedy his incapacity until Child is at least seven years old. Tr. Ct. Op., July 23, 2013, at 9. Turning to the best interests of Child, the court recognized that she had bonded with the foster parents and not with Father. Accordingly, the court concluded that clear and convincing evidence demonstrated that termination of Father's parental rights was in "the best interest of the developmental, physical and emotional needs" of Child. Id. at 9, 11. Although finding CYS's conduct relevant, the court opined that CYS's "unclean hands" did not excuse Father's incapacity to parent child. Accordingly, the court ordered the termination. Id. at 10.

Father appealed to the Superior Court, which reversed the termination of Father's parental rights. The Superior Court opined "that the orphans' court erred as a matter of law by terminating Father's parental rights in spite of its finding that CYS failed to provide him with reasonable efforts to promote reunification prior to filing its termination petition." In re D.C.D., 91 A.3d 173, 174 (Pa. Super. 2014). The Superior Court based this holding on a statutory analysis and a constitutional review.

Engaging in statutory interpretation, the Superior Court looked first to the provision in the Juvenile Act and the corresponding section of the federal Adoption and Safe Families Act ("ASFA") addressing disposition of a dependent child, rather than the directly applicable statutory section in the Adoption Act providing for termination of parental rights. Initially, the court reasoned that the corresponding dependency provisions of ASFA and the Juvenile Act require agencies to file a petition to terminate parental rights to a child who has been in foster care for fifteen of the last twenty-two months, with three exceptions, including if the agency has not provided the parent reasonable services to reunite with his or her children. Id. at 179 (citing 42 U.S.C. § 675(5)(E) and 42 Pa.C.S. § 6351(f)(9)).[5] The court recognized that it had previously

---

[5] The relevant portion of Section 6351 of the Juvenile Act provides:

> (f) Matters to be determined at permanency hearing. - At each permanency hearing, a court shall determine all of the following:
>
> * * * *
>
> (9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:
>
> (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(continued…)

interpreted this provision to require the agency to "make reasonable efforts to reunify a parent with his child prior to filing a petition to terminate that parent's rights." Id. The court then opined that "[t]here is no exception to the requirement that CYS provide reasonable efforts to a parent prior to filing a petition to terminate simply because the parent is incarcerated." Id.

The Superior Court, next, considered the constitutional implications of not providing reasonable services to a parent prior to termination of parental rights. Recognizing that this Court and the United States Supreme Court have held that the right to the care, custody, and control of one's children is a fundamental constitutional right, the Superior Court observed that any infringement of that right is subject to strict scrutiny requiring that the infringement be narrowly tailored to support a compelling state interest. Id. at 179-80 (citing Hiller v. Fausey, 904 A.2d 875, 885 (Pa. 2006)). The court found the termination proceedings to be narrowly tailored. It opined that the legislature balanced the compelling state interest of protecting the welfare of children with parents' fundamental right to raise their children in part by requiring agencies to provide reasonable efforts to promote reunification prior to petitioning for the termination

---

(…continued)

> (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or
>
> (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

42 Pa.C.S. § 6351(f)(9). Federal Section 675 includes very similar language as discussed infra at note 11.

of parental rights. After detailing CYS's failure in this case to provide reasonable efforts to assist Father, the court held that "the orphans' court erred as a matter of law by granting CYS's petition to terminate Father's parental rights." Id. at 181.

The Superior Court rejected CYS's argument that termination was proper under S.P., where this Court opined that incarceration may be relevant to a grant of termination based upon a parent's incapacity. The Superior Court attempted to distinguish S.P. by observing that the trial court in S.P. concluded that continued visits with the incarcerated father were not in the best interests of the child, in contrast to this case where the trial court had ordered CYS to provide such visits prior to the filing of the termination petition. Accordingly, the court noted that it was not reaching the question of whether incapacity had been demonstrated, instead confining its decision to holding that termination was impermissible absent the provision of reasonable efforts to Father.

The Superior Court acknowledged that its actions would delay permanency for Child who had been in care all her life, but opined that "CYS has left us no choice." Id. at 182. It held that CYS "violated Father's due process rights and prematurely filed its petition to terminate his parental rights." Id. at 182-83. Accordingly, the court held that the failure of CYS to provide reasonable efforts to reunify Father with Child required the denial of the termination petition, without considering the best interests of Child. Id.

CYS sought review of the Superior Court's decision, which we granted and submitted on briefs.[6] It contends that the Superior Court improperly added an element

---

[6]     This Court granted review of the following two questions,

> (1) Whether the Superior Court erred in not following In re Adoption of S.P., [616 Pa. 309] 47 A.3d 817 (Pa. 2012).

(continued…)

to the plain language of Section 2511's statutory requirements for termination of parental rights by imposing an obligation on CYS to demonstrate that it had made reasonable efforts to assist Father in reunifying with Child prior to filing a petition for termination. CYS argues that the Superior Court mistakenly focused on the elements of Section 6351(f)(9) of the Juvenile Act, which governs determination of the proper standards for a court's consideration when deciding a child's need for permanency, rather than Section 2511 of the Adoption Act, which sets forth the requirements for termination of parental rights. CYS further notes that Section 2511 "is silent regarding efforts by the Agency to assist the parent." CYS Brief at 26. Instead, the relevant subsection 2511(a)(2) is focused on the incapacity of the parent to care for his child, without mention of the agency's efforts.

Moreover, CYS argues that even if Section 6351(f)(9) was relevant to the question of termination under Section 2511, there is no language in that section precluding the filing of a termination petition in the absence of reasonable efforts; rather, the agency observes that the purpose of Section 6351(f)(9) is to require the filing of a termination petition absent the specified exceptions in subsections (f)(9)(i)-(iii), <u>see</u>

---

(…continued)

> (2) Whether the Superior Court erred in requiring an additional element for the termination of parental rights under 23 Pa.C.S.A. § 2511(a)(2); namely, that reasonable efforts must be made to assist a parent despite the court finding that the parent is incapable of parenting and cannot remedy the incapacity.

<u>In the Interest of D.C.D.</u>, 93 A.3d 802 (Pa. 2014) (alteration in original). We address these issues in reverse order, given that the Superior Court concluded that it could not reach the issue presented by <u>S.P.</u> absent the provision of reasonable efforts prior to the filing of the termination petition.

<u>supra</u> note 5.  It asserts that the punishment for failure to provide reasonable efforts is the withholding of federal funds not the denial of termination.  Accordingly, CYS maintains that the Superior Court improperly added an element to Section 2511.

Further, CYS contends that the Superior Court erred in not affirming the trial court's order terminating parental rights, based on our recent decision in <u>S.P.</u>, holding that incarceration may be relevant to a parent's incapacity.  Applying <u>S.P.</u> to this case, CYS emphasizes that Father will be not be released until 2018 at the earliest.  Noting that Father's incapacity to parent Child is based on his incarceration, CYS asserts that no amount of reasonable efforts by CYS will alter the fact that Father will be unable to parent Child until she is at least seven.  It also observes that it cannot remedy the difficulty of visitation caused by the absence of video visitation in SCI Graterford and the distance from Child's home.  Accordingly, CYS maintains that the Superior Court erred in denying termination of parental rights and delaying permanency for Child.

Child's Guardian <u>Ad</u> <u>Litem</u> (GAL) additionally files a brief criticizing the Superior Court's failure to place sufficient emphasis on Child's need for permanency, and instead focusing on CYS's conduct.  The GAL recognizes that courts may consider the relevance of any obstructive conduct of CYS in terms of determining a parent's incapacity and the best interests of the child.  Nonetheless, GAL argues, courts must primarily attend to children's need for permanency in considering termination. The GAL highlights that Father will be unable to care physically for Child until she is at least seven and notes the difficulty of creating a bond, which currently does not exist, between Child and Father through prison visitation when Father is incarcerated hours from Child's home.  In contrast, the GAL emphasizes Child's current bond with her foster parents with whom she has lived nearly all her life and who intend to adopt her.

With these considerations, GAL maintains that the trial court properly concluded that Father could not remedy his incapacity for purposes of Section 2511(a)(2) and that termination of parental rights was in the best interests of Child pursuant to Section 2511(b).

In response, Father echoes the Superior Court decision and urges this Court to read Section 6351 of the Juvenile Act in pari materia with Section 2511 of the Adoption Act regarding termination of parental rights. He contends that we should read the reasonable efforts requirement that he finds in Section 6351(f)(9), supra note 5, into Section 2511, infra note 7, to ensure that termination of parental rights is narrowly tailored to protect a parent's fundamental right to raise his child.

Turning to the language of Chapter 63 on the Juvenile Act, Father interprets the relevant sections to require that reasonable efforts be provided to a parent unless an aggravated circumstance, such as a parent's murder of another child, applies to exempt the agency from pursuing such efforts toward reunification. Father emphasizes that incarceration was not included in the list of aggravated circumstances, which he claims present the only situations when an agency is exempted from providing a parent reasonable efforts.

Like the Superior Court, Father looks to Section 6531(f)(9)(iii), requiring a court to inquire whether an agency has filed a termination petition if child has been in care for fifteen of the last twenty-two months unless, inter alia, reasonable efforts toward family reunification have not been provided. Despite the fact that the termination provision of Section 2511 does not reference Section 6351(f)(9) and that Section 6351(f)(9) exempts agencies from filing termination petitions, under specified circumstances, rather than forbidding the filing of such petitions, Father contends that "[i]n providing the language

of Section 6351(f)(9) of the Juvenile Act, the legislature has narrowly tailored the infringement that is the termination of parental rights so that it may only be pursued by a child protective services agency if the agency has provided reasonable efforts to promote the reunification of the family." Father's Brief at 10.

As did the Superior Court, Father attempts to distinguish S.P. based on the fact that CYS in this case contravened the trial court's order to provide visitation whereas the court in S.P. denied visitation to the parent. Additionally, Father observes that the child in S.P. had special needs which made it more likely that the Father would not have the parenting skills to care for child after being released from prison and intermediate housing. Father additionally argues that S.P. does not stand for the proposition that incarceration necessarily constitutes incapacity for purposes of proving termination under subsection 2511(a)(2), instead arguing that a court must consider other relevant factors regarding whether a parent has the capacity to parent a child and whether termination is in a child's best interests under subsection (b). Father raises the specter that under CYS's proposal an agency would be able to refuse reasonable efforts to incarcerated parents and then point to the lack of a parental bond created by their own refusal to provide services as justification for termination of parental rights. To prevent such result, Father urges this Court to affirm the Superior Court decision requiring the provision of reasonable efforts at reunifying parents prior to termination of parental rights.

Community Legal Services filed a brief as amicus curiae in support of Father. Amicus expands upon the statutory argument provided by Father which interprets Section 6351 in conjunction with Section 2511 (along with the relevant federal ASFA sections) to create a need to consider the reasonable efforts of CYS in order to protect

a parent's fundamental rights. In addition, Amicus observes that numerous other states have explicitly included reasonable efforts as an element or a factor in their relevant termination of parental rights statutes. Moreover, it emphasizes that reasonable efforts to assist incarcerated parents are beneficial to children as they allow for reunification upon a parent's release and support other connections to the birth families, including the potential of kinship care. It cites to the 2013 report of the Pennsylvania Children's Roundtable which opined, "Incarcerated parents have the same rights[,] as [parents] who are not incarcerated[,] to fully participate in the court process, to fully participate in case planning, to require the agency to make reasonable efforts toward reunification, and to have visitation and contact with their children." Amicus Brief at 34 (quoting 2013 Report of the Pennsylvania State Roundtable "Dependent Children of Incarcerated Parents," available at http://www.ocfcpacourts.us/childrens-roundtable-initiative/state-roundtable-workgroups/dependent-children-of-incarcerated-parents). Accordingly, Amicus argues that CYS cannot subvert the requirement to provide reasonable efforts to assist incarcerated parents to reunify with their children and avoid termination of parental rights.

When reviewing a trial court's decision to grant or deny a termination of parental rights petition, an appellate court should apply an abuse of discretion standard, accepting the findings of fact and credibility determinations if they are supported by the record, and reversing only if the trial court made an error of law or abused its discretion. S.P., 47 A.3d at 826. As we have noted, "a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." Id. We employ a de novo standard of review, however, when faced with questions of law, such as in this case, regarding whether an agency must provide

reasonable services to a parent before a court may grant a petition seeking termination of parental rights. See In re Adoption of S.E.G., 901 A.2d 1017, 1018 n.1 (Pa. 2006).

Before addressing the trial court's decision to grant termination of Father's parental rights, we will review the Superior Court's holding that termination cannot be granted, as a matter of law, absent the provision of reasonable services to the parent, initially considering the statutory analysis prior to the constitutional implications. As set forth above, the Superior Court and Father contend that Section 2511 of the Adoption Act, when read in conjunction with Section 6531 of the Juvenile Act, requires that an agency must provide a parent with reasonable efforts aimed at reunifying the parent with his or her children prior to petitioning for termination of parental rights and that termination cannot be granted absent the provision of reasonable efforts. Respectfully, we reject this holding as inconsistent with the language of both statutes.

As Father and the Superior Court acknowledge, Section 2511 entitled "Grounds for termination" does not mention reasonable efforts. Instead, the subsection applicable to this case sets forth the following ground for termination of parental rights:

> (a) General rule. - The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).[7]

---

[7]    In full, Section 2511(a) provides the following grounds for termination:
(continued…)

(a) General rule. - The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(3) The parent is the presumptive but not the natural father of the child.

(4) The child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search and the parent does not claim the child within three months after the child is found.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(continued…)

(6) In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child.

(7) The parent is the father of a child conceived as a result of a rape or incest.

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

(9) The parent has been convicted of one of the following in which the victim was a child of the parent:

(i) an offense under 18 Pa.C.S. Ch. 25 (relating to criminal homicide);

(ii) a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault);

(iii) an offense in another jurisdiction equivalent to an offense in subparagraph (i) or (ii); or

(iv) an attempt, solicitation or conspiracy to commit an offense in subparagraph (i), (ii) or (iii).

Id. § 2511(a).

If a ground for termination is demonstrated by clear and convincing evidence under subsection (a), a trial court next considers whether termination is in the best interests of the child under subsection (b):

> (b) Other considerations. - The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

Id. § 2511(b).

Neither subsection (a) nor (b) requires a court to consider the reasonable efforts provided to a parent prior to termination of parental rights. Nevertheless, this Court has observed that the provision or absence of reasonable efforts may be relevant to a court's consideration of both the grounds for termination and the best interests of the child. S.E.G., 901 A.2d at 1029. For example, as applicable to subsection (a)(2), a court may find an agency's lack of assistance to a parent relevant to whether a parent's incapacity "cannot or will not be remedied by the parent." 23 Pa.C.S § 2511(a)(2). Indeed, we agree with Father, at least in a situation involving a strong bond between parent and child prior to incarceration and a short term of incarceration, that a child welfare agency cannot refuse reasonable efforts to an incarcerated parent and then point to the resulting erosion in the parental bond created by the agency as justification for termination of parental rights. The fact that such a scenario can be articulated,

however, does not transform the provision of reasonable efforts to reunite parents and children into a requirement for termination. Nothing in the law goes so far, and the Superior Court erred in so holding.

Further, while we acknowledge that other states have included reasonable efforts as either an element or merely a factor in their termination provisions, the Pennsylvania legislature has not incorporated reasonable efforts into the language of 23 Pa.C.S. § 2511(a)(2), and it would be improper and, indeed, unwise for this Court to add such an element to the statute by judicial fiat. In contrast, we recognize that the legislature included consideration of the reasonable services available to the parent in regard to another ground for termination, subsection 2511(a)(5) (providing for consideration of whether "the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time").

We also do not find reasonable efforts are required prior to termination when Section 2511 of the Adoption Act, entitled "Grounds for termination," is read in conjunction with Section 6351 of the Juvenile Act, entitled "Disposition of dependent child." Rather, we conclude that the Superior Court and Father conjured a requirement in Section 6351(f)(9), when none exists. Instead of a requirement to provide reasonable efforts prior to the filing of a termination petition, Section 6351 actually creates an exception that excuses the filing of an otherwise required termination petition, as explained below.

A careful analysis of Section 6351 reveals the error in the Superior Court's analysis. Section 6351 details the required findings and determinations that a Juvenile Court must make in regard to dependent children, including who should have custody of

the child and what the permanency goals should be. 42 Pa.C.S. § 6531. Subsection (f) speaks to the "matters to be determined at [a] permanency hearing," including "[w]hether reasonable efforts were made to finalize the permanency plan in effect." Id. § 6351(f)(5.1).[8] As emphasized by the Superior Court and Father, subsection (f)(9) requires a court to determine:

---

[8]   In full, subsection (f) of Section 6351 provides:

> (f) Matters to be determined at permanency hearing.-- At each permanency hearing, a court shall determine all of the following:
>
> (1) The continuing necessity for and appropriateness of the placement.
>
> (2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
>
> (3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.
>
> (4) The appropriateness and feasibility of the current placement goal for the child.
>
> (5) The likely date by which the placement goal for the child might be achieved.
>
> (5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.
>
> (6) Whether the child is safe.
>
> (7) If the child has been placed outside the Commonwealth, whether the placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child.

(continued…)

(8) The services needed to assist a child who is 16 years of age or older to make the transition to independent living.

(8.1) Whether the child continues to meet the definition of "child" and has requested that the court continue jurisdiction pursuant to section 6302 if the child is between 18 and 21 years of age.

(8.2) That a transition plan has been presented in accordance with section 475 of the Social Security Act (49 Stat. 620, 42 U.S.C. § 675(5)(H)).

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:
(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

(10) If a sibling of a child has been removed from his home and is in a different placement setting than the child, whether reasonable efforts have been made to place the child and the sibling of the child together or whether such joint

If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

---

(…continued)

placement is contrary to the safety or well-being of the child or sibling.

(11) If the child has a sibling, whether visitation of the child with that sibling is occurring no less than twice a month, unless a finding is made that visitation is contrary to the safety or well-being of the child or sibling.

For children placed in foster care on or before November 19, 1997, the county agency shall file or join a petition for termination of parental rights under this subsection in accordance with section 103(c)(2) of the Adoption and Safe Families Act of 1997 (Public Law 105-89, 111 Stat. 2119).

Id. § 6351(f).

42 Pa.C.S. § 6351(f)(9).[9]

While the Superior Court seemingly read subsection 6351(f)(9)(iii) to forbid an agency from filing a termination petition when parents have not been provided reasonable services to achieve reunification, the language does not support such reading. Instead, the statutory language ensures that termination petitions are timely filed. Specifically, if a child has been in custody for 15 of the last 22 months, the court must inquire as to whether a termination petition has been filed, absent the listed exceptions of subsections (i)-(iii), including whether the parents have been provided necessary services. Requiring a court to inquire whether an agency has filed for termination promotes timely permanency for children rather than subjecting them to foster care drift. See In re R.J.T., 9 A.3d 1179, 1186 (Pa. 2010) (observing that the revisions following the 1997 federal enactment of ASFA were to address the problem of foster care drift by allowing agencies to pursue concurrent planning to ensure that children "move more quickly through the dependency system and into the permanent placement best suited to their individual situation through simultaneous pursuit of

---

[9] The corresponding federal statute similarly provides that when a child has been in foster care for 15 of the last 22 months, the agency "shall file a petition to terminate the parental rights" unless the state has not provided the family services the state deems necessary for returning the child to the home. 42 U.S.C. § 675(5)(E). Moreover, the relevant federal regulations provide that an "agency may elect not to file a petition to terminate the parental rights of a parent" when a child has been in care 15 of the last 22 months if the agency has not provided services to parent that it deems necessary. 45 C.F.R. § 1356.21(i)(2)(iii). Thus, as under the Pennsylvania statutes, the emphasis is upon ensuring that termination petitions are filed if a child has been in care for an extended time, absent specified exceptions.

reunification and alternative permanent placement");[10] S.E.G., 901 A.2d at 1018-19 (detailing the history of the adoption of concurrent planning in Pennsylvania). Accordingly, while reasonable efforts should be considered and indeed, in the appropriate case, a trial court could insist upon their provision, we hold that nothing in the language or the purpose of Section 6351(f)(9) forbids the granting of a petition to terminate parental rights, under Section 2511, as a consequence of the agency's failure to provide reasonable efforts to a parent.

Here Father was incarcerated prior to Child's birth, and will remain incarcerated at a minimum until Child is 7 years of age, and likely older. In accord with the trial court's findings of fact, Child has been with a foster family since shortly after her birth, and has bonded with that family. Under these facts, family reunification is not a realistic goal, and thus, while the trial court initially ordered reunification efforts to proceed, the court was within its discretion to terminate parental rights notwithstanding the agency's failure to follow that directive, as discussed in the next issue.

We additionally recognize, however, that agencies must provide reasonable efforts to enable parents to work toward reunification with their dependent children when ordered to do so by a trial court regardless of the legal correctness of that order. However, the remedy for an agency's failure to provide services is not to punish an innocent child, by delaying her permanency through denying termination, but instead to conclude on the record that the agency has failed to make reasonable efforts, which imposes a financial penalty on the agency of thousands if not tens of thousands of

---

[10] "Foster care drift" refers to the inadvertent movement of children through multiple placements within the child welfare system without a permanent home and has been shown to be detrimental to the children. See, e.g., S.E.G., 901 A.2d at 1019.

dollars under federal law. See, e.g., Tr. Ct. Op., June 21, 2012, at 11; Pennsylvania Court's Office of Children and Families in the Courts, Pennsylvania Dependency Benchbook, § 15.8.1 at 182 (2010).

As noted, the federal government enacted ASFA and related statutes to address the problems of foster care drift and ensure that dependent children are provided permanent homes either through reunification or adoption. To accomplish this goal, the federal government tied federal funding of foster care and adoption assistance to each state's adoption of a plan regarding its foster care system. 42 U.S.C. § 671 (setting forth the requirements of a state plan "[i]n order for a State to be eligible for payments" for foster care and adoption assistance). The federal government required state plans to provide that "reasonable efforts shall be made to preserve and reunify families," absent certain exceptions.[11] Id. § 671(a)(15)(B). Section 672 in turn provides, inter alia, that a state should "make foster care maintenance payments on behalf of each child" if "reasonable efforts of the type described in section 671(a)(15) of this title for a child have been made." Id. § 672(a)(1), (2)(A)(ii). The federal payments to the states are likewise based upon the Section 672 payments. Id. § 674; see also 45 C.F.R. 1356.21(b) (detailing that agencies must make reasonable efforts "to effect safe reunification" to be eligible to receive federal foster care maintenance payments).

---

[11]    Reasonable efforts at reunification are not required if continuation "is determined to be inconsistent with the permanency plan for the child," in which case efforts must be made to place the child in a permanent home. Id. § 671(a)(15)(C). Additionally, reasonable efforts are not required to be provided by a state plan if aggravated circumstances apply such as if the parent has subjected the child to "abandonment, torture, chronic abuse, [or] sexual assault" or if the parent has committed specified crimes. Id. § 671(a)(15)(D).

Thus, while the federal provisions require states to provide reasonable efforts to reunify families if deemed appropriate by a court, the penalty for a state's failure is financial. Neither Father nor the Superior Court point to any Pennsylvania or federal provision that requires delaying permanency for a child due to the failure of an agency to provide reasonable services, when a court has otherwise held that grounds for termination have been established and the court has determined that termination is in the best interests of the child by clear and convincing evidence. Accordingly, we conclude that the Superior Court erred in reversing the trial court's termination of Father's parental rights as a result of CYS's failure to provide reasonable efforts to enable Father to reunify with Child.

Although not overtly raised, we acknowledge that the Superior Court and Father suggest that reasonable efforts must be provided by the agency to guard a parent's fundamental right to the care, custody, and control of his children.[12] As we have previously held, "the right to make decisions concerning the care, custody, and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause." Hiller, 904 A.2d at 885. Accordingly, any infringement of that right by the state must be reviewed by this Court pursuant to a strict scrutiny analysis, determining

---

[12] Specifically, the Superior Court opined, "The legislature's requirement that the Agency provide reasonable efforts to promote reunification prior to filing a petition to terminate the parent's rights is a clear effort to protect the parent's fundamental right with respect to his child and to justify the state's great intrusion into that relationship." D.C.D., 91 A.3d at 180; see also Father's Brief at 10-11. As discussed supra, however, we conclude that the statutory provisions do not require the provision of reasonable efforts prior to the filing of a termination petition, although reasonable efforts are relevant to termination.

whether the infringement is narrowly tailored to effectuate a compelling state interest. Id.

Obviously, termination of parental rights is the most extreme infringement of parental rights. Additionally, it is beyond cavil that the protection of children, and in particular the need to provide permanency for dependent children, is a compelling state interest. In balancing these interests, the General Assembly has created a detailed system setting forth the limited situations which would result in removal of children from their parents and termination of parental rights. Moreover, the statutory construct requires specific determinations by the trial court regarding the proper placement and permanency goals of the children at each step of the process. Ultimately, the grounds of termination must be demonstrated by the state by clear and convincing evidence. See Santosky v. Kramer, 455 U.S. 745, 770 (1982) (requiring clear and convincing evidence of termination to protect parent's substantive due process rights); Matter of Adoption of G.T.M., 483 A.2d 1355, 1356 (Pa. 1984). We conclude that this system is sufficiently narrowly tailored to protect a parent's fundamental right while also ensuring the safety and permanency needs of dependent children.

Finally, we conclude that the trial court did not abuse its discretion in determining that Father is incapable of providing care for Child and that that incapacity will exist at least until Father's minimum release date of 2018 when Child will be seven. In S.P., we held that "incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing 'essential parental care, control or subsistence'" and observed that the length of a parent's continued incarceration may be "highly relevant to whether 'the conditions and causes of the

incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent,'" for purposes of termination pursuant to 23 Pa.C.S. § 2511(a)(2). S.P., 47 A.3d at 830.

Applying this standard to the case at bar, the trial court did not abuse its discretion in holding that CYS established grounds for termination of Father's parental rights by clear and convincing evidence based on Father's continued incapacity to care for child. Moreover, the trial court recognized for purposes of subsection 2511(b) that a parent's continued incarceration may factor into a determination of the child's best interests. Id. In this case, the court did not abuse its discretion in determining that Child's best interests will be served by terminating Father's parental rights given the absence of a bond with Father, Father's expected incarceration until Child is at least seven and likely longer, and her strong bond with her foster family with whom she has lived nearly all her life and who has indicated a desire to adopt her.

Accordingly, we reverse the decision of the Superior Court and reinstate the trial court's decision terminating Father's parental rights.

Mr. Chief Justice Castille, Mr. Justice Saylor and Madame Justice Todd join the opinion.

Mr. Justice Eakin files a concurring opinion in which Mr. Justice Stevens joins.