J-S36016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: D.B., SR., FATHER | : | |
| | : | |
| | : | No. 794 MDA 2024 |

Appeal from the Decree Entered May 31, 2024
In the Court of Common Pleas of Mifflin County Orphans' Court at No(s):
2024-00009

| | | |
|---|---|---|
| IN THE INTEREST OF: K.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: D.B., SR., FATHER | : | |
| | : | |
| | : | No. 795 MDA 2024 |

Appeal from the Order Entered May 31, 2024
In the Court of Common Pleas of Mifflin County Orphans' Court at No(s):
2024-00010

| | | |
|---|---|---|
| IN THE INTEREST OF: M.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: D.B., SR., FATHER | : | |
| | : | |
| | : | No. 796 MDA 2024 |

Appeal from the Order Entered May 31, 2024
In the Court of Common Pleas of Mifflin County Orphans' Court at No(s):
2024-00011

| | | |
|---|---|---|
| IN THE INTEREST OF: D.B., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

:
:
:
APPEAL OF: D.B., SR., FATHER   :
:
:
:
:
:    No. 797 MDA 2024

Appeal from the Order Entered May 31, 2024
In the Court of Common Pleas of Mifflin County Orphans' Court at No(s):
2024-00012

| IN THE INTEREST OF: A.R.E.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.B., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 798 MDA 2024 |

Appeal from the Order Entered May 31, 2024
In the Court of Common Pleas of Mifflin County Orphans' Court at No(s):
2024-00013

| IN THE INTEREST OF: B.M.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.B., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 799 MDA 2024 |

Appeal from the Order Entered May 31, 2024
In the Court of Common Pleas of Mifflin County Orphans' Court at No(s):
2024-00014

BEFORE:  LAZARUS, P.J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED NOVEMBER 12, 2024**

- 2 -

D.B., Sr. ("Father") appeals from the orders terminating his parental rights to his six minor children. Father's counsel ("Counsel") has filed an **Anders**[1] brief and application to withdraw. Father has filed a motion requesting new counsel and argues the orphans' court abused its discretion in terminating his parental rights after the juvenile court denied him visitation with his children. We affirm the termination of Father's parental rights, grant Counsel's application to withdraw, and deny Father's motion for counsel.

S.B. ("Mother") and Father are the natural parents of six children: J.B.; K.B.; D.B., Jr.; B.B.; M.B.; and A.-R.B ("the Children"). They were born in 2010, 2014, 2016, 2019, 2020, and 2022, respectively. The five eldest children were placed in the custody of the Mifflin County Children and Youth Services Agency ("CYS") in December 2021. They were adjudicated dependent in January 2022. The youngest child was placed in CYS's custody and adjudicated dependent in September 2022.

CYS filed petitions for termination of Mother's and Father's parental rights to the Children on January 24, 2024. Immediately before a hearing on the petitions began, on April 29, 2024, Mother relinquished her parental rights.

The CYS caseworker testified that CYS first became involved with the family in January 2020, when the family moved to Mifflin County from Dauphin County. CYS had received reports of "drug use, criminal activity, unstable

---

[1] **Anders v. California**, 386 U.S. 738 (1967); **see also In re V.E.**, 611 A.2d 1267, 1275 (Pa.Super. 1992) (holding **Anders** protections apply to appeals of involuntary termination of parental rights).

housing, unstable income, domestic violence in the home, inappropriate discipline, and truancy." Order and Opinion, May 31, 2024, at 2. In December 2021, Mother and Father admitted to using methamphetamine, but they refused drug tests and a home visit from CYS. N.T., 4/29/24, 13-14. These circumstances led to the removal of the five eldest children. *See id.* at 13-15.

Father was then incarcerated in July 2022, and has remained in prison. *Id.* at 27. He is serving sentences for two counts each of endangering the welfare of children ("EWOC") and possession with intent to deliver, and one count each of simple assault and criminal use of a communication facility. *Id.* at 5; Ex. P-31. Four of the Children were victims of Father's EWOC conviction. N.T. at 38. Mother was the victim of Father's simple assault. *Id.* at 56. Although the record does not elaborate on the bases for Father's convictions, according to the testimony, on one occasion, Father held a gun to Mother's head, and on another occasion, the Children's grandmother held a gun to Father's head to stop him from beating Mother. *Id.* at 49.

The youngest child, A.-R.B., was removed from Mother's care in September 2022, two days after her birth. Mother was incarcerated at the time. The Children now reside with foster parents. *Id.* at 15.

CYS developed several child permanency plans during the life of the case. *Id.* at 16. The initial goals called for the parents to

> [e]nsure the physical, medical, developmental, educational, emotional needs of the children are met; ensure his own physical and mental health needs are being assessed and addressed in order to meet the needs of the children; live a drug-free lifestyle and refrain from criminal activity; participate in [Family

- 4 -

Intervention Crisis Services ("FICS")] reunification services . . . [t]o meet the needs of the children and family; ensure safe, stable, and sanitary home conditions; and cooperate with [CYS] and service providers.

*Id.* at 17.

The CYS caseworker stated that Father was minimally compliant with the goals. *Id.* at 18-19, 36. Father has not been compliant with the drug use requirements, because he has refused all drug tests. *Id.* at 17, 36. CYS also found Father "was uncooperative and not meeting his own mental health needs" by refusing to participate in any mental health services, despite his mental health concerns and lengthy drug history. *Id.* at 18, 36. CYS has further concerns about Father's violence against Mother and the Children. *Id.* at 18.

The executive director of FICS testified that FICS began reunification services for Father in January 2022, by "providing visitation, opportunity for counseling sessions, parent education sessions . . . lifestyle checks, drug screens, and at times transportation." *Id.* at 42; *see also id.* at 44-45. Father refused drug screens and refused to sign releases for his mental health treatment. *Id.* at 46-47. In the months before he was incarcerated, Father would not allow FICS into the home for lifestyle checks. *Id.*

Regarding visitation with the Children, Father attended 23 of 28 visits with the Children before he was incarcerated. *Id.* at 59. Some visits involved conflict with Mother, and on one occasion, FICS contacted the police because Father "was conflicting with staff and refused to leave[.]" *Id.* at 55. CYS also

found that during visits, the parents inappropriately forced the eldest child into a parental role. *Id.* at 20-22.

Since his incarceration, Father has frequently written the Children letters and e-mails. *Id.* at 32. He has also sent the Children hand-painted "hankies" as gifts. *Id.* at 23-24, 33-34, 53. However, CYS censors Father's letters and e-mails because he makes inappropriate promises to the Children. *Id.* at 20-21, 24-25. FICS had also instructed Father not to make future promises in his letters to the Children. *Id.* at 50, 68; *see also id.* at 50 (testimony regarding the effect of Father's promises on the three children in trauma therapy).

While Father was incarcerated in county prison – between July and December 2022 – he visited with the Children 14 of 17 offered times. *Id.* at 29, 60. However, Father's parenting ability was still of concern during these visits, as he continued to make inappropriate statements to the Children. *Id.* at 55-56.

After Father was moved to a state incarceration facility, in December 2022, he was unable to visit with the Children. *Id.* at 84. Following a permanency review hearing in April 2023, the juvenile court terminated Father's visits with the Children. *Id.* at 31-32.

In June 2023, Father filed a petition to restart visitation, which the court granted. *Id.* at 81; Ex. R-5. Visits resumed in February 2024 on Zoom. N.T. at 31, 61. FICS provided conditions for the visits, including asking Father not to make promises to the Children about the future. *Id.* at 48-49. However,

Father still made promises to the Children during the video visits. *Id.* at 50. Two of the Children did not want to participate in the last visit. *Id.* at 26.

The executive director of FICS testified that if Father was released from incarceration, he would not be able to effectively care for the Children. *Id.* at 54. She said that in addition to addressing other concerns about his ability to safely parent, he would require a lengthy drug treatment program. *Id.* at 56-57. The program could last from several months to two years. *Id.* at 38.

The CYS caseworker testified that there is no parental bond between Father and the Children. *Id.* at 25. The FICS executive director also testified that the Children do not see their relationship with Father as safe, and that they do not believe Father can meet their needs. *Id.* at 58.

The CYS caseworker testified that the Children are doing well in their foster home. *Id.* at 22. The FICS executive director testified that the foster parents provide safety, stability, love, and nurturance. *Id.* at 57. The Children have a significant parental bond with the foster parents. *Id.* at 58.

The eldest child, who was 14 years old at the time, testified that she wanted to be adopted by the foster parents, with whom she has lived for a year and a half. *Id.* at 131-32. She stated, "I want to be adopted because at the moment right now I do not feel like my dad is able to give me what I need, one, being in jail . . . , two, not having his house of his own and, three, not ever really having visits and not home." *Id.* at 133. She stated that when she lived with Mother and Father, she "felt safe because [she] had two parents and there was no like robbers or anything, but [she] didn't feel safe because

- 7 -

there was domestic abuse." *Id.* at 134. She also recounted, "In Harrisburg we didn't have much food because my parents were doing drugs at the time and sleeping and not really in the moment. This one time I had to eat mustard because I was hungry and there was no food in the fridge." *Id.* at 136-37.

Father testified that he has completed programs in prison for domestic violence, drug and alcohol abuse, mental health, and parenting. *Id.* at 78. He also testified regarding the letters and hankies he sent the Children to maintain their relationship. Father stated that he did not feel CYS had made a strong enough attempt to reunify him with the Children. He maintained that CYS and FICS had withheld his letters and gifts from the Children and manipulated them into wanting to be adopted. According to Father's counsel, Father will be eligible for parole in July 2025. *Id.* at 75, 120. Father claimed he could be released to a drug treatment program as soon as six months after the hearing. *Id.* at 76, 119-20.

The orphans' court entered an Order and Opinion granting the petition for termination of Father's parental rights. The court also issued orders terminating Father's parental rights as to each child.[2] The court found grounds for termination exist under 23 Pa.C.S.A. § 2511(a)(2), (a)(5), (a)(8), and (b).

Father filed a notice of appeal at each child's docket. As stated above, Counsel has filed an *Anders* brief and moved to withdraw. CYS, counsel for

---

[2] The orders were dated May 7, 2024, but filed May 31, 2024.

the Children, and the guardian *ad litem* each filed a brief in support of the termination. Father submitted a *pro se* response to the **Anders** brief.

We must assess the adequacy of Counsel's request to withdraw. ***Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*). Counsel is required to file a petition to withdraw "stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous." ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*). Counsel must file with the petition an **Anders** brief, in which counsel must

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** (quoting ***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009)). Counsel must provide a copy of the **Anders** brief to the client, and advise the client of the right to retain new counsel or proceed *pro se*. **Id.**

Instantly, Counsel has filed a motion to withdraw stating he believes the appeal would be frivolous. Counsel's **Anders** brief provides a history of the case, citations to testimony that arguably support Father's appeal, and Counsel's reasons for concluding the appeal is frivolous. Counsel has sent Father a copy of the **Anders** brief and a letter informing him of his right to proceed with private counsel or *pro se*.

Counsel has satisfied the technical requirements for petitioning to withdraw. We will therefore turn to the merits of the appeal, followed by our own examination of the record to detect any non-frivolous issues. *Santiago*, 978 A.2d at 355 n.5; *In re Adoption of B.G.S.*, 240 A.3d 658, 662 (Pa.Super. 2020).

We begin with the standard for review for an order terminating parental rights.

> A party seeking termination of parental rights bears the burden of establishing grounds for termination "by clear and convincing evidence." *In re Z.S.W.*, 946 A.2d 726, 728 (Pa.Super. 2008). Clear and convincing evidence is evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* at 728-729 (internal quotation marks and citation omitted). We accept the findings of fact and credibility determinations of the trial court if the record supports them. *See In re C.M.C.*, 140 A.3d 699, 704 (Pa.Super. 2016). If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion. *Id.*

*In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018).

Section 2511 of the Adoption Act governs the termination of parental rights. *Matter of Adoption of L.C.J.W.*, 311 A.3d 41, 48 (Pa.Super. 2024); *see* 23 Pa.C.S.A. § 2511(a), (b). It first requires the party seeking termination to establish that the parent's conduct satisfies one of the statutory grounds for termination delineated in the subsections of Section 2511(a). *L.C.J.W.*, 311 A.3d at 48. This Court need only affirm the orphans' court's finding for termination under any one subsection of Section 2511(a). *In re D.L.B.*, 166 A.3d 322, 327 (Pa.Super. 2017). The petitioner must then prove that

- 10 -

termination will best serve the needs and welfare of the child, pursuant to Section 2511(b). *L.C.J.W.*, 311 A.3d at 48.

Here, the court found grounds for termination under Section 2511(a)(2), (a)(5), and (a)(8). Termination under subsection (a)(2) requires proof of the following three elements:

> (1) repeated and continued incapacity, abuse, neglect or refusal;
>
> (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and
>
> (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*Id.*

A parent's "incapacity" to provide essential parental care, control, or subsistence for his child is not limited to affirmative acts of misconduct. It also exists when the parent fails "to demonstrate a concrete desire or ability to remedy the problems that led to [the c]hild's placement." *Id.* at 327-28. For example, a parent demonstrates incapacity by failing to cooperate with agency services, participate in drug treatment, and complete mental health counseling. *Id.* at 328. Incarceration can also establish a parent's incapacity to provide essential parental care, control or subsistence. *In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012).

While the statute does not set a deadline for the remedying of the incapacity to parent, subsection (a)(2) does not require a court to allow a parent infinite time to do so. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa.Super.

- 11 -

2010). To this end, the length of a parent's remaining incarceration is "highly relevant" to whether the parent can or will remedy an incapacity. **S.P.**, 47 A.3d at 830; **see also In re Adoption of A.C.**, 162 A.3d 1123, 1132 (Pa.Super. 2017) ("[C]ourts properly consider the incapacitating effect of a parent's incarceration and whether the duration of that incarceration would prevent a parent from remedying the incapacity"). Similarly relevant to this inquiry is any uncertainty regarding a parent's release date and whether reunification will be further delayed by the released parent's need "to obtain housing, employment, and transportation skills in addition to parenting skills." **S.P.**, 47 A.3d at 831. Ultimately, "[a] child's need for consistent parental care and stability cannot be put aside or put on hold simply because the parent is doing what [he] is supposed to do in prison." **In re E.A.P.**, 944 A.2d 79, 84 (Pa.Super. 2008).

Here, in finding termination warranted under this subsection, the orphans' court observed that the Children were adjudicated dependent in January and September 2022. Order and Opinion at 4. It further found that thereafter,

> FICS provided Father with parent education, counseling sessions, visitation, and lifestyle checks. Father did not take advantage of the services offered by FICS before incarceration. Father did engage in services while incarcerated. Father had made minimal progress toward alleviating the circumstances that necessitated the original placement of J.B., K.B., D.B.JR., B.B., M.B., and A.-R.B. Father failed to meet the objectives of [CYS]. Father has a lack of insight into his inabilities and believes he has done everything he can to have the [C]hildren returned to his custody upon his release from incarceration. Father does not have a place

for J.B., K.B., D.B.JR., B.B., M.B., and A.-R.B. to stay if the [C]hildren would be returned to him and home conditions are still an issue. Father testified he believes he should be accepted into a State Drug Treatment Program. If Father is accepted into a State Drug Treatment Program there is additional drug and alcohol treatment for approximately sixty (60) days before the possibility of release. At that point, Father still does not have sustainable housing for the [C]hildren. After more than two years of services, [CYS] and FICS both testified Father is not capable of providing for the [C]hildren's physical, developmental, and emotional needs.

Father still exhibits the inability to parent. Due to his lack of insight and his failure to meet [CYS's] objectives, Father was never able to remedy his behaviors and provide the [C]hildren with an environment that would meet the [C]hildren's emotional, mental, physical, and developmental needs.

This has caused J.B., K.B., D.B.JR., B.B., M.B., and A.-R.B. to be without essential parental care, control, or subsistence necessary for their physical and mental well-being. Due to the extended duration of this case, the Court finds Father's incapacity cannot be remedied in a timely manner. For these reasons, the Court finds by clear and convincing evidence grounds for termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2).

*Id.* at 4-5.

The record supports the orphans' court's conclusions. Father has been incarcerated since July 2022, and the Children have been in placement since January and September 2022 due to Father's drug use, domestic violence, and resulting incarceration. Father initially failed to demonstrate a desire to remedy the conditions that led to the Children's placement by refusing to comply with the services offered by CYS and FICS prior to his incarceration, including drug treatment and mental health counseling. And, although Father asserts he has made some progress while in prison, Father's release date is

uncertain, as is the length of time he would be in a drug treatment program once released.

We next turn to the Section 2511(b) inquiry. Section 2511(b) requires the court to "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The court must place the child's best interest above the needs of the parent. ***Int. of K.T.***, 296 A.3d 1085, 1105 (Pa. 2023). The court must consider "intangibles such as love, comfort, security, and stability." ***Id.*** at 1106 (citation omitted). It must review whether the child has a beneficial bond with the biological parent and the effect of severing any such bond, and whether the child is bonded to pre-adoptive foster parents. ***Id.***; ***see also id.*** at 1109-11, 1113-15.

Here, the court recognized that Father has kept in contact with the Children during his incarceration and that there is a bond between them. Order and Opinion at 9. However, it also observed that J.B. testified she has concerns about living with Father due to his past drug use, domestic violence, and lack of housing; that her foster parents meet the needs of herself and her siblings; and that she wishes to be adopted. ***Id.*** The court further observed that Father has continued to discuss inappropriate topics with the Children, has "parentified" J.B., and is currently incarcerated. ***Id.*** at 9-10. The court concluded that termination of Father's parental rights would not sever an existing, necessary, and beneficial relationship. ***Id.*** at 10.

The court also observed that the Children are doing well in the home of their foster parents, who are an adoptive resource. It found that denying termination would threaten the Children's developmental, educational, and emotional foundation, "as they would be deprived of a permanent, healthy, safe, and secure parent/child relationship with their foster parents." *Id.* The court thus concluded termination would best serve the Children's developmental, physical, and emotional needs and welfare. *Id.* The record supports the court's Section 2511(b) determination.

In the *Anders* brief, Counsel identifies the issue of whether the juvenile court failed to apply the correct legal standard when suspending Father's visits in April 2023. Counsel notes the argument that Father was wrongfully deprived visitation with the Children between December 2022, when he was moved to state prison, and February 2024, when visitation resumed. According to the argument, CYS did not make adequate efforts to provide for visitation as required under 55 Pa.Code § 3130.68. These wrongs allegedly prejudiced Father, because in determining whether termination was in the Children's best interests, the orphans' court considered J.B.'s testimony that one of the reasons she wished to be adopted was "Not ever really having visits." *Anders* Br. at 24. Counsel notes that Father attempted to maintain his relationship with his children by writing letters and e-mails from prison, and he has taken "advantage of every program that was made available to him at the prison to make him a better parent and person when he eventually does get out of prison." *Id.* at 15-16.

Father's *pro se* brief raises this same issue, adding that he was denied due process when the juvenile court discontinued his visits without any petition having been filed. He further argues the court's error was not harmless, as it damaged the strong bond he had shared with his Children. Father points out that while he was denied visitation for 14 months, this did not deter him from maintaining contact with the Children, to whom he sent letters and the hankies as gifts. Father also alleges the foster parents did not give the Children the hankies or the e-mails to manipulate them into preferring adoption.

The issue is frivolous. Neither Section 2511(a) or (b) "requires the court to consider the reasonable efforts provided to a parent prior to termination of parental rights." *In re D.C.D.*, 105 A.3d 662, 672 (Pa. 2014). Evidence that an agency failed to provide services to a parent might be relevant to whether that parent can or will remedy their incapacity, under subsection (a)(2), and whether termination is in the best interests of the child, pursuant to Section 2511(b). *Id.* However, where a parent's incapacity is due to a lengthy incarceration, and reunification is not a realistic goal, an orphans' court does not abuse its discretion in terminating parental rights under Section 2511(a)(2) and (b), even where an agency failed to provide adequate visitation to the incarcerated parent and that failure had a negative effect on the parental bond. *Id.* at 675, 677.

As our Supreme Court has explained, if a court were to delay termination based on such an allegation, where Section 2511 has been met, it would

- 16 -

punish an innocent child. *Id.* at 675. Instead, where an agency fails to fulfill its statutory requirement to provide a parent with reunification services, the remedy is a financial penalty under federal law. *Id.* Moreover, our Supreme Court has held that the legislative scheme governing dependency and termination proceedings in Pennsylvania is sufficiently tailored to safeguard a parent's rights. *Id.* at 677.

Therefore, whether CYS provided Father with adequate visitation, and/or whether the juvenile court erred in denying Father visitation during a portion of the dependency case, are not bases for invalidating the orphans' court's termination analysis. Moreover, the court here did not find that termination was in the Children's best interests solely due to an interruption in their visitation with Father. It also considered Father's present and future ability to meet the Children's developmental, physical, and emotional needs, and the Children's bond with their pre-adoptive foster parents. There is no reasonable basis in fact or law on which to argue this issue.

Our independent review of the record discloses no non-frivolous issues. We therefore affirm the orders terminating Father's parental rights, grant Counsel's application to withdraw, and deny Father's motion for the appointment of new counsel.

Orders affirmed. Application to withdraw granted. Motion for counsel denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/12/2024