J-S90031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF:  J.N.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  S.A.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2446 EDA 2016 |

Appeal from the Order Entered June 28, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  51-FN-469930-2009,
CP-51-AP-0000419-2013

| | | |
|---|---|---|
| IN THE INTEREST OF: K.J.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  S.A.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2448 EDA 2016 |

Appeal from the Order Entered June 28, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-0000600-2015
FN-469930-2009

BEFORE:  OTT, SOLANO, JENKINS, JJ.

MEMORANDUM BY OTT, J.: **FILED DECEMBER 15, 2016**

S.A.G. ("Mother" or "S.G.") appeals from the orders entered June 28, 2016, in the Court of Common Pleas of Philadelphia County, Family Court Division,  that involuntarily terminated her parental rights to her sons, J.N.D.

("J.D."), born in September of 2008, and K.J.G. ("K.G."), born in September

of 2013 (collectively, "Children").[1]  We affirm.

The trial court summarized the relevant factual and procedural history

of these cases, as follows:

> On October 31, 2011, DHS [Philadelphia Department of Human Services, Children and Youth Division] received a substantiated General Protective Service (GPS) report alleging that the family home lacked heat, had an illegal electricity connection and had defective plumbing. Furthermore, there was minimal food in the home. Moreover, the mother left her children home alone while she was out trying to obtain illegal drugs. DHS determined that the family lacked adequate housing and the children lacked adequate parental supervision.
>
> On November 29, 2011, DHS obtained an Order of Protective Custody (OPC) for J.D. The child, J.D., was placed in foster care.
>
> A Shelter Care Hearing was held on December 1, 2011 before Master Tammy Langenberg. Master Langenberg lifted the OPC and ordered the temporary commitment of J.D. to the care and custody DHS.
>
> On January 17, 2012, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. Judge Irvine adjudicated J.D. dependent and committed him to the care and custody of DHS.
>
> The matter was listed on a regular basis before Judges of the Philadelphia Court of Common Pleas - Family Court Division - Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351, and evaluated for the purpose of determining or reviewing the permanency plan of the child.
>
> On May 5, 2014, DHS received a substantiated GPS report alleging that the mother, S.G. was under the influence of PCP

_____

[1] By order of August 24, 2016, this Court consolidated the above-captioned appeals *sua sponte*.

while K.G. was in her custody. The mother, S.G., was incoherent and was taken to Temple University Hospital by ambulance. The report further alleged that the mother, S.G., was unable to provide the name of any relative who was available to care for K.G.

On May 6, 2014, DHS obtained an OPC for K.G. K.G. was placed in foster care. A Shelter Care Hearing was held on May 8, 2014, before the Honorable Jonathan Q. Irvine. Judge Irvine lifted the OPC and ordered the temporary commitment of K.G. to the care and custody of DHS.

On May 22, 2014, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. Judge Irvine adjudicated K.G. dependent and committed him to the care and custody of DHS.

In subsequent hearings, the DRO's reflect the Court's review and disposition as a result of evidence presented, addressing, and primarily with, the goal of finalizing the permanency plan.

[On September 8, 2015, DHS filed a petition to involuntarily terminate the parental rights of S.G. and the unknown putative father of K.G., and an amended petition to involuntarily terminate the parental rights of S.G., E.D., the father of J.D., and the unknown putative father of J.D.]

On February 9, 2016 and June 28, 2016, a Termination of Parental Rights hearing was held[.][2]

Trial Court Opinion, 9/15/2016, at 1–2 (unnumbered).

On June 28, 2016, the Court found by clear and convincing evidence that Mother's parental rights of J.D. and K.G. should be terminated pursuant

_____

[2] S.G. attended the February 9, 2016 hearing, but despite a court subpoena, did not appear for the June 28, 2016 hearing. S.G. did not present any witnesses or evidence on her own behalf.

J-S90031-16

to 23 Pa.C.S. §§ 2511(a)(1), (a)(2), (a)(5) and (a)(8), and (b).[3] Furthermore, the trial court found it was in the best interest of the children that the goal be changed to adoption. This appeal by Mother followed.

Mother now presents five issues for our review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, S.G. pursuant to [Section] 2511(a)(1) where Mother completed some of her FSP goals[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, S.G. pursuant to [Section] 2511(a)(2) where Mother presented evidence that she has remedied her situation by meeting her goal of parenting, housing and visitation and has the present capacity to care for her children[?]

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of mother, S.G. pursuant to [Section] 2511(a)(5) where evidence was provided to establish that the children were removed from the care of their mother, and that mother is now capable of caring for her children[?]

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of mother, S.G. pursuant to [Section] 2511(a)(8) where evidence was presented to show that mother is now capable of caring for her children[?]

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, S.G. pursuant to [Section] 2511(b) where evidence was presented that established the children have a bond with their Mother and

_____

[3] The trial court also involuntarily terminated the parental rights of the unknown putative father of K.G.; E.D., the father of J.D.; and the unknown putative father of J.D.

- 4 -

they had lived with their Mother for the first part of their lives[?]

Mother's Brief at 7.

Our standard of review is well established:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *See* 23 Pa.C.S. § 2511. The burden rests upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with a consideration of section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In the instant case, the trial court terminated Mother's parental rights under Sections 2511(a)(1), (a)(2),

(a)(5), (a)(8), and 2511(b). We will focus on Sections 2511(a)(8) and (b), which provide as follows:

>    **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds: …
>
>>       (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>>
>>       …
>
>    **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8), (b).[4]

---

[4] It is important to note:

>    Section 2511(a)(8) explicitly requires an evaluation of the "needs and welfare of the child" prior to proceeding to Section 2511(b), which focuses on the "developmental, physical and emotional needs and welfare of the child." Thus, the analysis under Section 2511(a)(8) accounts for the needs of the child in addition to the behavior of the parent. … Accordingly, while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate

*(Footnote Continued Next Page)*

J-S90031-16

We first address whether the trial court erred by terminating Mother's parental rights pursuant to Section 2511(a)(8).

> In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(8), the following factors must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003).

"Notably, termination under Section 2511(a)(8)[] does *not* require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of her children." *In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006) (citations omitted) (emphasis in original).

Here, the trial court analyzed the evidence presented at the termination hearing, as follows:

> In the instant case, the mother did not complete her Family Service Plan (FSP) objectives. The original case manager, Sierra Gregg, testified that the mother's FSP objectives were: 1) complete drug and alcohol treatment, 2) comply with mental health treatment, 3) obtain appropriate housing, 4) maintain visits with the children[] and 5) complete parenting class. … The petitions indicate that the mother did not complete drug and

*(Footnote Continued)* ───────────

> the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In re Adoption of C.L.G.*, 956 A.2d 999, 1008-1009 (Pa. Super. 2008) (citations omitted).

- 7 -

alcohol treatment. She did not successfully complete an outpatient drug treatment program and did not demonstrate any prolonged period of sobriety. Furthermore, the mother did not have appropriate housing. Moreover, the mother did not consistently visit with the children.

\*\*\*\*

In the instant matter, J.D. has been in placement care for approximately fifty-five months. K.G. has been in placement care for approximately twenty-five months. The testimony established that the children are in a pre-adoptive homes [sic] with their needs being met. Furthermore, it would be in the best interest of the children if the mother's rights were terminated.

\*\*\*\*

[T]he original case manager testified that the mother did not complete mental health treatment. The original case manager and the current case manager, David Coleman, testified that the mother failed to comply with the court ordered random drug and alcohol screens. Furthermore, the case managers testified that the mother did not complete a drug and alcohol program. Moreover, the original case manager testified that the mother's interactions with J.D. were inappropriate. J.D. is autistic and the original case manager testified that the mother "…did not understand how to be appropriate in regards to his developmental delays due to the autism". The current case manager testified that the mother has trouble controlling J.D. during visits and is unable to meet his needs regarding his autism. The current case manager further testified that he has not seen any improvement in the mother's ability to interact with J.D. during visits. Additionally, the current case manager had to end a visit early because the mother appeared to be under the influence of "something" - meaning an illegal substance/drug. Lastly, the mother did not consistently visit with the children[.] She missed fifty percent of the scheduled visits with her children.

\*\*\*\*

[B]oth J.D. and K.G. reside in a pre-adoptive foster home. They share a bond with their foster parents. They refer to them as mom and dad. The foster parents meet the daily needs of the children including their medical[] and educational needs. K.G. is not upset when he leaves the visits with the mother, S.G. The

child, J.D., runs up to his foster parents and gives them hugs after visits with the mother. Furthermore, the testimony established that J.D. would not suffer any long term detrimental impact if his mother's parental rights were terminated. Lastly, it would be in the best interest of the children if the mother's parental rights were terminated and the goal is changed to adoption.

Trial Court Opinion, 9/15/2016, at 3–6 (unnumbered) (record citations omitted).

With regard to the requirements of Section 2511(a)(8), the record supports the finding of the trial court that Children have been "removed from [Mother's] care for 12 months or more from the date of removal." 23 Pa.C.S. § 2511(a)(8). Further, "the conditions which led to the removal or placement of the child continue to exist" because Mother has failed to make progress toward completing her reunification objectives. *Id.* Specifically, at the time of the June 28, 2016 hearing, Mother had not maintained regular visitation with Children, stopped treatment at her dual diagnosis program due to noncompliance, was not currently in any dual treatment program, failed to provide five random drug screens, and was residing in a shelter.[5]

Finally, the record confirms that "termination of parental rights would best serve the needs and welfare of the child." *Id.* This Court has stated that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The

---

[5] *See* N.T., 6/28/2016, at 7–9.

court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S., supra*, 901 A.2d at 513. Here, the record shows that J.D. – age seven years – is a special needs child with autism, that K.G. – age two years – was removed from Mother when he was seven and one-half months old, and that both children are bonded with their foster parents who meet their daily needs, including medical and educational needs. At this point in their young lives, Mother's continued lack of progress toward her reunification objectives has left Children in a prolonged state of limbo, which clearly does not serve Children's "needs and welfare." *Id.*

The sole argument presented by Mother with respect to Section 2511(a)(8) is that she "would have benefitted from housing referral and additional parenting classes for parents who have autistic children." Mother's Brief at 15. This argument, however, is unavailing because a trial court is not required to consider reasonable efforts in relation to a decision to terminate parental rights. *In re D.C.D.*, 105 A.3d 662, 675 (Pa. 2014). *See also In re Adoption of C.J.P.*, 114 A.3d 1046, 1055 (Pa. Super. 2015) ("While the Supreme Court in *D.C.D.* focused its analysis on Section 2511(a)(2), we find the Supreme Court's reasoning equally applicable to Section 2511(a)(8). Like Section 2511(a)(2), nothing in the language of Section 2511(a)(8) suggests that reasonable reunification services are necessary to support the termination of parental rights.").

Based upon our careful review of the record, the trial court's opinion, the briefs on appeal, and the relevant law, we conclude that the trial court's findings are supported by clear and convincing, competent, and sufficient evidence, and that it properly concluded the elements of Section 2511(a)(8) were met.

We next consider whether the trial court erred by terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(b). We have discussed our analysis pursuant to Section 2511(b) as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

- 11 -

Our Supreme Court has stated, "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M, supra*, 71 A.2d at 268 (citation omitted). The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of Childhood ever in mind." *Id.* at 269. The *T.S.M.* Court observed that "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

As discussed above, the trial court determined the best interest of Children would be served by termination of Mother's parental rights. Mother, however, argues Children had a strong bond with her prior to their placement, and she continued her bond with them through her visitation. We find this argument presents no basis upon which to disturb the trial court's decision.

The record shows Mother missed half of the visits between the termination hearing dates of February 9, 2016, and June 28, 2016,[6] Mother's interactions during the visits were not appropriate with J.D., who is autistic,[7]

_____

[6] N.T., 6/28/2016, at 17.

[7] N.T., 2/9/2016, at 24–25; N.T., 6/28/2016, at 10.
*(Footnote Continued Next Page)*

there was no improvement in Mother's ability to interact or engage with J.D. during the visits,[8] and the current caseworker testified J.D. would not suffer any long term detrimental impact from the termination of Mother's parental rights.[9]  At the time of the June 28, 2016, hearing, J.D. was seven years old, he refers to his foster parents as "mom and da," and has been there for over three years.[10]

With regard to K.G., the evidence shows that Mother had missed half of the visits for him between February 9, 2016, and June 28, 2016, and the caseworker opined that it would be in K.G.'s best interests that Mother's parental rights be terminated to make him free for adoption.[11]  The caseworker testified K.G. was two years of age and had been in care for a little over two years.  He further testified K.G. refers to his foster parents as his mother and father, and when he returns home after a visit, he runs up

_(Footnote Continued)_ ————————

[8] N.T., 2/9/2016, at 33–34, 48; N.T., 6/28/2016, at 18.

[9] N.T., 6/28/2016, at 10–11.

[10] _**Id.**_ at 11.

[11] N.T., 6/28/2016, at 15, 17.

and gives them hugs.[12]  When asked if K.G. appears very upset when he has to leave Mother during the visits, the caseworker replied, "No."[13]

The trial court found termination of Mother's parental rights would not have a detrimental effect on Children and the record supports the trial court's determination.  In sum, our review confirms there is competent, sufficient evidence that shows termination of Mother's parental rights best serves Children's developmental, physical, and emotional needs and welfare. *See* 23 Pa.C.S. § 2511(b), *supra*.

Accordingly, we affirm the trial court's determination that DHS proved grounds for the involuntary termination of Mother's parental rights to J.D. and K.G. pursuant to §§ 2511(a)(8) and (b).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2016

---

[12] *Id.* at 14–16.

[13] *Id.* at 16.