J-S27032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.M.P.E. A/K/A D.E., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.K.E., JR., FATHER | |
| | No. 2977 EDA 2016 |

Appeal from the Decree and Order Dated August 17, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-AP-0000749-2015
CP-51-DP-0125918-2009
FID: 51-FN-470888-2009

| | |
|---|---|
| IN THE INTEREST OF: A.L.E., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.K.E., JR., FATHER | |
| | No. 2978 EDA 2016 |

Appeal from the Decree and Order Dated August 17, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-AP-0000751-2015
CP-51-DP-0001624-2014
FID: 51-FN-470888-2009

| | |
|---|---|
| IN THE INTEREST OF: T.K.E., III, A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |

APPEAL OF:  T.K.E., JR., FATHER

No. 2979 EDA 2016

Appeal from the Decree and Order Dated August 17, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-AP-0000750-2015
CP-51-DP-0125919-2009
FID:  51-FN-470888-2009


IN THE INTEREST OF:  J.E.E., A MINOR

IN THE SUPERIOR COURT OF
PENNSYLVANIA

APPEAL OF:  T.K.E., JR., FATHER

No. 2980 EDA 2016

Appeal from the Decree and Order Dated August 17, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-AP-0000747-2015
CP-51-DP-0001626-2014
FID:  51-FN-470888-2009


IN THE INTEREST OF:  J.J.E., A MINOR

IN THE SUPERIOR COURT OF
PENNSYLVANIA

APPEAL OF:  T.K.E., JR., FATHER

No. 2981 EDA 2016

Appeal from the Decree and Order Dated August 17, 2016

- 2 -

in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-AP-0000748-2015
CP-51-DP-0001625-2014
FID: 51-FN-470888-2009

BEFORE: GANTMAN, P.J., OTT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JUNE 22, 2017**

In these consolidated appeals,[1] T.K.E., Jr. (Father) appeals the decrees and orders of the Court of Common Pleas of Philadelphia County, entered August 17, 2016, that terminated his parental rights to his children, D.M.P.E., T.K.E., III, A.L.E., J.E.E., and J.J.E. (Children), and changed the Children's permanency goals to adoption. We affirm.[2]

Philadelphia's Department of Human Services (DHS) filed petitions to terminate Father's parental rights to the Children on October 23, 2015. The trial court aptly summarized the events that led DHS to file those petitions in its opinion entered December 15, 2016. We direct the reader to that opinion for the facts of this case.

The trial court held hearings on DHS' petitions on February 24, 2016, and August 17, 2016. Neither Mother nor Father was present at the February 24 hearing, but both were represented by counsel. (**See** N.T.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] This Court consolidated these appeals, *sua sponte*, on October 13, 2016.

[2] The trial court terminated the parental rights of the Children's mother, J.P. (Mother), on February 24, 2016. Mother did not appeal that termination.

Hearing, 2/24/16, at 2, 4). Father was transported from prison to attend the hearing on August 17. (*See* N.T. Hearing, 8/17/16, at 8). Testifying at the hearings, in addition to Father, was caseworker Khaliah Moody. The trial court entered its decrees terminating Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b), and its orders changing the permanency goals to adoption pursuant to 42 Pa.C.S.A. § 6351, on August 17, 2016. Father filed his timely notices of appeal and statements of errors complained of on appeal on September 12, 2016. *See* Pa.R.A.P. 1925(a)(2)(i).[3]

Father raises the following question on appeal:

A. Whether the trial court erred and/or abused its discretion by entering an order on August 17, 2016 involuntarily terminating the parental rights of [F]ather where [F]ather attempted to contact DHS/CUA [(Community Umbrella Agency)] on numerous occasions to be notified of his objectives and to visit with his [C]hildren without any response?

(Father's Brief, at 5).

We have examined the opinion entered by the trial court on December 15, 2016, in light of the record in this matter, and we are satisfied that it is a complete and correct analysis of this case. Further, with respect to Father's chief argument alleging DHS' failure to provide reasonable reunification efforts, we observe that our Supreme Court has held:

_____

[3] The trial court entered an opinion on December 15, 2016. *See* Pa.R.A.P. 1925(a)(2)(ii).

- 4 -

> Neither [f]ather nor the Superior Court point to any Pennsylvania or federal provision that requires delaying permanency for a child due to the failure of an agency to provide reasonable services, when a court has otherwise held that grounds for termination have been established and the court has determined that termination is in the best interests of the child by clear and convincing evidence. Accordingly, we conclude that the Superior Court erred in reversing the trial court's termination of [f]ather's parental rights as a result of CYS's failure to provide reasonable efforts to enable [f]ather to reunify with Child.

***In re D.C.D.***, 105 A.3d 662, 676 (Pa. 2014); (***see also*** Father's Brief, at 7-9, 12). In light of this precedent, we conclude that Father's claim is meritless.

Accordingly, we affirm the decrees and orders of the Court of Common Pleas of Philadelphia County that terminated Father's parental rights to his Children and changed their goals to adoption, on the basis of the trial court's opinion.

Decrees and orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/2017

THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY
IN THE COURT OF COMMON PLEAS

PROPROTHY

| | |
|---|---|
| IN THE INTEREST OF: | : FAMILY COURT DIVISION |
| | : JUVENILE BRANCH-Dependency |
| | : |
| D.M.P.E., a Minor | : CP-51-AP-0000749-2015/CP-51-DP-0125918-2009 |
| d/o/b: 09/ /2007 | : |
| | : |
| T.K.E., III, a Minor | : CP-51-AP0000750-2015/CP-51-DP-0125919-2009 |
| d/o/b: 002/ /2009 | : |
| | : |
| A.L.E., a Minor | : CP-51-AP0000751-2015/CP-51-DP-0001624-2014 |
| d/o/b: 07/ /2013 | : |
| | : |
| J.E.E., a Minor | : CP-51-AP0000747-2015/CP-51-DP-0001626-2014 |
| d/o/b: 06/ /2012 | : |
| | : |
| J.J.E., a Minor | : CP-51-AP0000748-2015/CP-51-DP-0001625-2014 |
| d/o/b: 07/ /2010 | : |
| | : |
| | : Superior Court No. |
| Appeal of: | : 2977 EDA 2016/ 2978 EDA 2016/ 2979 EDA 2016/ |
| | : 2980 EDA 2016/ 2981 EDA 2016 |
| T.K.E., Jr., Father | : CONSOLIDATED[1] |

## O P I N I O N

## INTRODUCTION

T.K.E., Jr., ("Father"), Appeals from the Decree and Orders entered by this Court on August 17, 2016, granting the Petitions to Involuntarily Terminate Father and Mother's Parental Rights to their five minor ("Children"): D.M.P.E., a male, (d/o/b: 9/ /2007); T.K.E., III, a male, (d/o/b: 2/ /2009); A.L.E., a female, (d/o/b: 7/ /2013);

---

[1] October 13, 2016, Consolidated Sua Sponte. Comment: Review of these matters indicates that these appeals involve related parties and issues. Accordingly, the appeals at Nos. 2977, 2978, 2979, 2980 and 2981 EDA 2016 are hereby CONSOLIDATED. See Pa.R.A.P. 513.

1

J.E.E., a male, (d/o/b: 6/██/2012), and J.J.E., a male, (d/o/b: 7/██/2010), filed by the Department of Human Services ("DHS") on October 25, 2015, and served on all parties.

Hearings on the merits were held on February 24, 2016, and August 17, 2016. J.P., ("Mother's") parental rights to her five Children were terminated on February 24, 2016. Mother did not appeal that decision. At the conclusion of the August 17, 2016, Hearing this Court found that clear and convincing evidence was presented to terminate the parental rights of Father.

In response to the Order of August 17, 2016, terminating his parental rights, Father, by and through his counsel, filed a Notice of Appeal with Statement of Matters Complained of on Appeal on September 12, 2016.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

In his Statement of Matter Complained of on Appeal, Father raises the following issues:

1. The Trial Court erred and/or abused its discretion by entering an order on August 17, 2016 involuntarily terminating the parental rights of Father where Father attempted to contact DHS/CUA on numerous occasions to be notified of his objectives and to visit with his Children without any response.

## PROCEDURAL HISTORY

On July 8, 2014, the Department of Human Services (DHS) received a Child Protective Services Report alleging that the Children's Mother, (J.P.), the Children's Father, (T.K.E., Jr.), Child, J.E.E., and Child, A.L.E. were inside an automobile parked outside the home of the Children's Maternal Aunt, M.P., since 3:00 a.m. that morning; that Mother and Father were found unconscious in the front seat of the automobile; that

2

A.L.E. was unbuckled in the back seat and not safely in her car seat; that A.L.E. appeared flushed but conscious; that J.E.E. was lying in the back seat on his back; that he also appeared flushed but conscious; and that was hard to awaken. The Report further alleged that J.E.E.'s external temperature was elevated; that the car was not running and the windows were slightly open; that when the door to the back seat was opened, Mother awoke immediately, but Father did not; that Mother stated the family was in the car because they were locked outside Maternal Aunt's home; and that they had been in the car for five hours. The Report also alleged that the Children appeared dirty and had soiled diapers; that J.E.E. had sores and blisters all over the bottoms of his feet; that Mother thought J.E.E.'s sores and blisters were normal; that Mother argued with the police and emergency medical services for 40 minutes about whether her Children needed to be evaluated by a hospital; and that the Children were taken to St. Christopher's Hospital for Children to be evaluated for dehydration and hyperthermia. The Report alleged that A.L.E. was born substance-exposed on July 25, 2013; that the whereabouts of the three older Children: D.M.P.E., T.K.E., III, and J.J.E., were unknown. It was further alleged that Mother claimed that the male in the car was her cousin; that Mother has a history of poor housing and opiate abuse; that Mother had difficulty meeting the basic needs of her Children; and that Mother used aliases at the hospital for herself and her Children. This Report was indicated. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"a").

On July 8, 2014, DHS received a Supplemental Report alleging that the Children were taken to St. Christopher's Hospital for Children for a medical evaluation; that

3

Mother was observed to be anxious as she accompanied J.E.E. and A.L.E. to the Emergency Room (ER); that Mother claimed she was residing with Maternal Aunt, M.P., and could not get in the home that morning when they returned. The Report further alleged that Mother told hospital staff that her name was Jennifer Bonawitz and that the Children's last name was Michaels; that the Children were examined and found to be physically healthy; that while a doctor was attempting to photograph the Children, Mother punched the doctor; and Mother became increasingly anxious and fled the hospital. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"b").

On July 8, 2014, DHS learned that the Children, D.M.P.E. and T.K.E., III, had insect bites and rashes on their bodies, which was a result of poor hygiene. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"c").

DHS also learned that the family had been transient and living in their car since on or about June 17, 2014; that J.E.E. and A.L.E. slept in the car at night in front of Maternal Aunt's home; that D.M.P.E, T.K.E., III, and J.J.E. slept at a neighbor's home or at the home of their Paternal Grandfather, T.E., Sr.; and that D.M.P.E, T.K.E., III, and J.J.E. were not allowed to remain in the home during the day. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"e").

On July 8, 2014, DHS obtained an Order of Protective Custody (OPC) for all five (5) Children, and placed them in foster homes through Asociacion Puertorriquenos en

4

Marcha (APM). (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"f").

A Shelter Care Hearing was held on July 10, 2014 for all five Children before the Honorable Allan L. Tereshko. OPC was lifted. The Court found the temporary commitment of legal custody to DHS stands. The Children's placement in foster care through APM continues. Supervised visits every other week with Mother and Father shall occur at the Agency. Mother and Father are referred to CEU for an assessment and a forthwith drug screen to include 3 random drug screens, once they make themselves available. DHS is to ensure T.K.E., III, receives exam and eye glasses, if necessary. (Shelter Care Order, 7/10/2014).

On August 6, 2014, DHS and the Community Umbrella Agency (CUA) held an Initial Single Case Plan (SCP) Meeting. The parental objectives established for Mother were to attend scheduled visitation with the Children; to explore housing options; to attend CEU dual diagnosis assessment, drug screen, and comply with any recommendations; and to attend ARC for supportive services. The parental objectives for Father were to participate in future SCP meetings; and to attend CEU dual diagnosis assessment, drug screen, and comply with any recommendations. Mother and Father participated in the Meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"h").

On October 10, 2014, Mother was arrested on drug related charges. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"i").

5

On December 11, 2014, an Adjudicatory Hearing was held before the Honorable Allan L. Tereshko, for all five Children. Legal custody of the Children remains with DHS. The dependent Children shall remain in foster care through CUA-APM. All five Children Adjudicated Dependent. Visitation is set forth as bi-weekly on Thursdays from 5-6 p.m. Supervised at the Agency as arranged. Visitation with siblings shall occur at least twice a month. As to D.M.P.E., three intake appointments were scheduled for the Wedge but did not occur. Child has not been attending school regularly. He was taken to CRC due to making life threatening statements. D.M.P.E. is to receive IEP. As to all the Children, Mother and Father referred to CEU for assessment and monitoring with dual diagnosis. DHS and CUA to be able to sign for mental health and routine evaluations. Mother and Father referred for Parenting Capacity Evaluation. CUA to assist Mother with tokens for transportation to visits. (Orders of Adjudications and Disposition—Child Dependent, 12/11/2014).

On January 26, 2015, Father was arrested for a violation of the terms of his probation related to charges of stolen property for which he was arrested on March 15, 2011. Father was sentenced to a minimum of one year and six months to a maximum of three years of confinement. He is currently incarcerated at State Correctional Institute (SCI) Camp Hill. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"k").

On February 18, 2015, DHS and the CUA held an SCP Meeting. The parental objectives established for Mother and Father were the same as previously established. Mother and Father failed to participate in the SCP Meeting. (Exhibit "A" Statement of

6

Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"1").

A Permanency Review Hearing was held on February 24, 2015, before the Honorable Allan L. Tereshko. Legal custody of the Children shall remain with DHS, and placement of the Children shall remain in Foster Care through CUA-APM. Mother currently incarcerated at Riverside Correctional Facility and Father is currently incarcerated at CFCF. Children are doing well and up to date on medical. D.M.P.E. and T.K.E., III, had intake appointments at the Wedge. CUA-APM is to ensure these two Children follow up with services through the Wedge. CUA-APM to make outreach to parents, ensure they are aware of Single Case Plans. Parents to be referred to CEU for assessment, full drug and alcohol screen and three (3) random screens at 1501 Arch St., when they avail themselves to CUA-APM and to be referred back to ARC. (Permanency Review Orders, 2/24/2015).

On April 16, 2015, Mother pled guilty to possession of a controlled substance with intent and conspiracy to possess a controlled substance. She was sentenced to three years of reporting probation. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"n").

A Permanency Review Hearing was held on May 28, 2015 before the Honorable Margaret Theresa Murphy. Legal custody of the Children shall remain with DHS, and placement of the Children shall remain in Foster Care. Children reside in Foster Care through CUA-APM. Children have been in care for ten (10) months. D.M.P.E., T.K.E., III., and J.J.E. attend Pennell Elementary School, and are up to date on medical, immunizations, and dental. A.L.E. and J.E.E. receive individual therapy through the

7

Wedge. Mother resides at 3526 Emerald Street, Philadelphia, PA 19134, and has bi-weekly Thursday visits with the Children at the Agency. Mother referred to ARC and to continue attending. Father remains incarcerated. Children are to remain committed. Mother referred to CEU for a forthwith drug screen assessment and monitoring. Mother and Father referred for a Parenting Capacity Evaluation. Father to contact CUA. Mother and Father's visits are to continue as arranged. Mother to provide verification on mental health treatment, drug and alcohol, and housing. CUA to keep Mother informed of the Children's medical appointments. Mother to sign for medication and for T.K.E., III to receive the necessary eye surgery. Psychiatric Report as to this Child to be forwarded to the Child Advocate upon receipt. CUA to provide Mother with the information of this Child's doctor to insure no delay in signing the necessary forms. (Permanency Review Orders, 5/28/2015).

A Permanency Review Hearing was held on August 13, 2015, before the Honorable Allan L. Tereshko. Legal custody of the Children shall remain with DHS, and placement of D.M.P.E., A.L.E., and T.K.E., III shall remain in a Pre-Adoptive Home through Bethany—supervised by CUA-APM. Placement of J.E.E., and J.J.E. shall remain in Foster Care through Children's Choice. Mother is scheduled for a Parenting Capacity Evaluation, and Father remains incarcerated. Mother is re-referred to CEU for assessment and forthwith screen with three (3) random drug screens and dual diagnosis prior to the next court date. Mother is to comply with her Parenting Capacity Evaluation. Mother is to provide her hospital discharge paperwork to CUA. Father is referred to CEU for assessment and screen once he is released from prison. (Permanency Review Orders, 8/13/2015).

8

Mother has a history of drug use, including the use of cocaine and benzodiazepine. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"q").

D.M.P.E. was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"r").

T.K.E., III, has speech delays, hearing problems, and is believed to have behavioral concerns. He is not receiving treatment at this time. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"s").

D.M.P.E. and T.K.E., III, are together in a pre-adoptive home where their needs are being met. They have been residing with A.C. and R.C., a married couple, since August 26, 2014, and Mr. and Mrs. C. are interested in adopting the two Children. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"x").

J.E.E. and J.J.E. are together in a pre-adoptive home where their needs are being met. They have been residing with A.P. since August 11, 2015, and she is interested in adopting the two Children. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"y").

A.L.E. is in a pre-adoptive home where her needs are being met. She has been residing with J.L. since July 10, 2014, and Ms. L. is interested in adopting her. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 10/23/2015, ¶"z").

9

## TERMINATION HEARINGS

On February 24, 2016 and August 17, 2016, this Court held Goal Change/Termination Hearings and heard testimony on DHS's Petition to Terminate Father's Paternal Rights as to his Children, and Change the Permanency Goal to Adoption. Mother and Father were not present at the February 24, 2016 hearing, however they were both represented by their attorneys. (N.T. 2/24/2016, p.4 at 19-23). Father was transported from prison to the hearing held on August 17, 2016. (N.T. 8/17/2016 at p.8 at 7-25)

The Assistant City Solicitor's first witness on February 24, 2016 was Khaliah Moody, CUA-APM Case Worker. She was assigned to this case on October 13, 2014. She testified she conducted Single Case Plan (SCP) Meetings. Mother's objectives were for Mother to attend CEU evaluation and follow the recommendations, for Mother to maintain visitation with the Children, for Mother to attend ARC for services, for Mother to continue to attend drug and alcohol treatment and follow all recommendations and for Mother to continue to attend mental health treatment and follow all recommendations. (N.T. 2/24/2016 at p.9 at 5-17).

Father's objectives from the beginning were for Father to participate in future meetings and for Father to attend the CEU for assessment and random drug screens and comply with all recommendations. Ms. Moody testified Father never attended the CEU, never attended any of the safety conferences, and never participated in any of the meetings. Father has been incarcerated since January 26, 2015, and pled guilty to theft by unlawful taking, removal of property, receiving stolen property, possession of firearm

10

prohibited, conspiracy and firearms not to be carried without license. There is no release date for Father. (N.T. 2/24/2016 p.13 at 4-25; p.14 at 1-10).

Ms. Moody testified since she had the case, Father has only attended one visit with the Children and the Mother was also present. Father has not seen the Children in over a year. She opined that reunification with Father would not be appropriate. (N.T. 2/24/2016 p.14 at 11-25).

She noted that the Children are not placed together. The two older boys are together, the other two boys are together, and the girl is separate. (N.T. 2/24/2016 p.15 at 1-5).

Ms. Moody stated she last saw the Children on February 8, 2016, and they were all safe and their needs were being met. All the Children have pre-adoptive resources, and she believes it would be in the best interests of the Children to be adopted. Regarding Father, she only observed Father with the Children one time which was about a year and a half ago. She opined the Children would not suffer irreparable harm if Father's parental rights were terminated. (N.T. 2/24/2016 p.17 at 10-25; p.18 at 1-5).

On cross-examination by Regina Tuchinsky, the Child Advocate, Ms. Moody stated Father was referred for a parenting capacity evaluation, however, he never attended. Originally when Father was incarcerated he was at CFCF, outreach was made there and also at SCI Camp Hill. Father was notified of his objectives by certified mail to the prison. She did not know if Father had participated in any programs in the prison. (N.T. 2/24/2016 p.22 at 23-25; p.23 at 1-12).

With regards to her opinion of Father's parental bond with his Children, Ms. Moody stated there was no bond between Father and his Children, and it is in the Children's best interest to be adopted. (N.T. 2/24/2016 p.25 at 3-9).

On cross-examination by Emily Cherniak, Father's attorney, Ms. Moody stated she never saw Father at the prison, and that Father failed to attend SCP Meetings that were held before he was incarcerated. Ms. Cherniak asked her if any accommodation was made for ATA to go to the prison to conduct the Parenting Capacity Evaluation for Father, Ms. Moody stated they did not make accommodations. (N.T. 2/24/2016 p.25 at 18-25; p.26 at 1-12; p.27 at 1-11).

On re-direct, Ms. Moody noted that from October 2014, when she was assigned the case, until the Petitions were filed in October of 2015, Father never responded to her letters and never asked for any type of accommodation. She further testified that she did receive correspondence from Father in January 2016. (N.T. 2/24/2016 p.29 at 16-25; p.30 at 1-8; p.31 8-18).

At the conclusion of the Hearing on February 24, 2016, the Honorable Allan L. Tereshko found "Mother's rights are terminated, the evidence is clear and convincing pursuant to 2511 (a)(1), (2), (5) and (8), and the grounds are satisfied." (N.T. 2/24/2016 p.33 at 17). Mother's parental rights were terminated as to her five (5) Children.

A subsequent Hearing was held on August 17, 2016 before the Honorable Allan L. Tereshko. Father was present and represented by counsel. (N.T. 8/17/2016 p.3 at 12).

The Court noted that Mother's parental rights had been terminated at the Hearing on February 24, 2016. The evidence was closed at the time and the decision on Father's rights held in abeyance for CUA to reach out to Father to sign Voluntary Relinquishment

12

Petition. Father did not sign the Voluntary Relinquishment Petition. (N.T., 8/17/2016 p.5 at 10-17).

Father made a statement to the Court that he has been in prison for the last 21 months, and has made many previous attempts to contact CUA and to contact Ms. Moody to no avail. He stated he completed programs, and signed up for parenting classes. He also stated he wrote letters to his Children and to the foster parents, however, he received nothing in return. He noted he could be paroled in five months and he could serve up to five years. He requested the Court give him the opportunity to have his Children when he is released from prison. He stated he has no contact with the Mother of his Children, and he does not want to lose his parental rights. (N.T. 8/17/2016 p.8 at 7-25; p.9 at 1-25).

## STANDARD OF REVIEW AND LEGAL ANALYSIS

In reviewing an appeal from an order terminating parental rights, the Superior Court adheres to the following standard: [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. In re: R.J.T., 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. Id.; R.I.S., [36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]

13

Termination of parental rights is governed by Section 2511 of the Adoption Act 23 Pa.C.S.A. §§ 2101–2938, which requires a bifurcated analysis. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond. *In re L.M.,* 923 A.2d 505, 511 (Pa.Super.2007) (citations omitted). In re Adoption of C.J.P., 2015 PA Super 80, 114 A.3d 1046, 1049-50 (2015). The Court need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. In re Adoption of C.J.P., 2015 PA Super 80, 114 A.3d 1046, 1050 (2015).

A. **The Trial Court Properly Found the Department of Human Services Met Its Burden by Clear and Convincing Evidence To Terminate Father's Parental Rights Pursuant to 23 Pa.C.S.A. §2511(a)(1),(2),(5), and (8).**[2]

---

[2] 1(a) General Rule.—the rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parenting claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parents by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the

This Court found clear and convincing evidence to terminate Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1),(2),(5), and (8).

After hearing the credible testimony of Khaliah Moody, the CUA-APM Case Worker, the Court found by clear and convincing evidence that her observations and conclusions regarding Father were persuasive. Father failed to provide safe and appropriate housing for his Children. The evidence showed that both Mother and Father were homeless and sleeping in a car outside of their relative's home when the Agency became involved. Both Mother and Father had substance abuse problems that were dominating their lives and they could not provide a safe and adequate environment for their Children. Further, evidence was presented that Father only attended one visit with the Children before he was incarcerated. Ms. Moody stated that originally, when Father was incarcerated at CFCF, outreach was made there and also at SCI Camp Hill. Father was notified of his objectives by certified mail to the prison. She did not know if Father had participated in any programs in the prison. Father stated he had completed programs and signed up for parenting classes in prison, however, he never presented documentation to corroborate this assertion. The Record demonstrates Father's ongoing inability to provide care or control for the Children, nor can he perform any parental duties.

---

parent are not likely to remedy the conditions which led to the removal or placement of the child within reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would best serve the needs and welfare of the child.

## B. Trial Court Properly Found that Termination of Father's Parental Rights was in the Children's Best Interest and that DHS Met Its Burden Pursuant to 23 Pa.C.S.A. §2511(b)[3]

The documents and testimony provided this Court with clear and convincing evidence that termination of Father's parental rights would be in the best interest of the Children. This Court finds credible the testimony from the Agency staff that the Children would not suffer irreparable harm if Father's rights were terminated and that termination of Father's parental rights would be in the best interest of the Children. The Children all live in nurturing and loving homes with the foster parents, who are bonded to the Children and meets all of their emotional and physical needs.

## CONCLUSION

The Court found that although Father has been in prison for twenty-one (21) months during the Children's placement, he failed to participate and comply with parental objectives before he was incarcerated. The Court was not persuaded that Father could or would resolve these issues in the near future to provide permanency and safety for the Children.

At the conclusion of the hearings the Court stated:

---

[3] Other Considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1),(6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

16

Considering the evidence, which was closed as of the date of the last hearing, it's clear and convincing and it satisfies the standard—and it's a high standard imposed by the statute—that Father has been unable to remedy the issues that brought the Children into care.

They were removed from his and the Mother's care based upon the circumstances which showed that they were transient and, in fact, living in a car and they were not able to protect the Children at that time and provide for their basic needs.

And the evidence in further clear that Father will not be able to remedy those issues and would not be able to put himself in a position to care for these Children or provide for their well-being and safety.

And I often hear the pleas to not terminate parental rights, but the plea is always fashioned on the consideration of the parent, and the plea never expresses the future well-being of the Children, and this is what this case is all about.

The case is all about these Children and who can best provide and care for them, going forward, and you have not demonstrated that you were able to do it during their lifetimes prior to placement, nor have you demonstrated that you will be able to do it in the future.

So considering the evidence under 2511(a)(1), (2), (5), and (8), and 2511(b), since the evidence establishes that there would be no irreparable harm—and I use the word irreparable because that is the test; not whether there would be any harm to the Children if your rights were terminated, but whether there would be any irreparable harm, and the evidence is clear that there would be none.

So the statement is satisfied under 2511(b). Consider that and the prior termination of Mother's rights, Father's rights are terminated as to all five Children and the Children may be placed for adoption.

(N.T. 8/17/2016, p.10 at 9-25; p.11 at 1-25).

For the foregoing reasons, this Court respectfully requests that the Order of August 17, 2016 Terminating Father, T.K.E., Jr's Parental Rights be AFFIRMED.

BY THE COURT:

_____
ALLAN L. TERESHKO, Sr. J.

Dec. 15, 2016
DATE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing OPINION in the above matter was served upon the below listed persons on _12-15-16_ in the manner stated:

Michael Pratt, Esq., ACS        Family Court Mailbox
City of Phila. Law Dept.
1515 Arch St-15th Flr.
Phila. Pa 19102
Counsel for DHS

Bridget Warner, Esq., ACS        Family Court Mailbox
City of Phila. Law Dept
1515 Arch St., 15th Flr.
Phila., PA 19102

Patricia Anne Korey, Esq.        Family Court Mailbox
Phila. Defenders Association
Child Advocacy Unit
1441 Sansom St.
Phila., Pa 19102
Counsel for Minor Children

Emily B. Cherniack, Esq.        Family Court Mailbox
1500 JFK Blvd., Ste. 1010
Phila., Pa., 19102
Counsel for Appellant Father, T.K.E.Jr.

James W. Martin, Esq.        Family Court Mailbox
1800 JFK Blvd., Ste. 300
Phila., PA 19103
Counsel for Mother, J.P.

**BY THE COURT:**

*Allan L. Tereshko*

ALLAN L. TERESHKO, Sr. J.