J-S23014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.A.B.-W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 880 EDA 2025 |

Appeal from the Decree Entered March 11, 2025
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-AP-0000111-2024

BEFORE: STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.: **FILED OCTOBER 1, 2025**

B.W. ("Father") appeals from the March 11, 2025, decree involuntarily terminating his parental rights to his daughter, R.A.B.-W., born in April of 2015.[1] We affirm.

In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court set forth the relevant facts and procedural history of this case, as follows.

> The Department of Human Services ("DHS") first became aware of this family in January 2022. At the time, R.A.B.-W. was [more than six] and one-half years old. R.A.B.-W. was also, at the time, effectively homeless; she was staying with her maternal aunt due to her mother being deceased and Father being incarcerated. Father is incarcerated because he was convicted of murder and unlawful possession of a firearm after killing R.A.B.-W.'s biological brother, at which R.A.B.-W. was present. Based on those issues, R.A.B.-W. was adjudicated dependent in January 2022 and committed to DHS. R.A.B.-W. has remained in the care of DHS

_____

[1] R.A.B.-W.'s mother, S.D., died on October 12, 2021. **See** Petition to Verify Deceased Status, 3/5/24, at Exhibit A.

since January 2022 and has been placed with a maternal aunt, who has been R.A.B.-W.'s caregiver since the adjudication of dependency.

Trial Court Opinion, 4/25/25, at 1-2 (citing N.T., 3/11/25, at 8-9) (cleaned up).

With respect to Father's crimes, the record confirms that he was arrested in January of 2019, on charges related to murder and unlawful possession of a firearm with respect to the death of R.A.B.-W.'s biological brother. **See** N.T., 3/11/25, at DHS Exhibit 1. Father ultimately entered into a negotiated guilty plea for "murder of the third degree," and, in January of 2020, he was sentenced to a term of incarceration of 20 to 40 years' imprisonment. **See id.**; **see also** 18 Pa.C.S.A. § 2502 (Murder). Father also pleaded guilty to "possession of a firearm prohibited," and, on the same date, he was sentenced to two years and six months to five years' imprisonment. **See id.**; **see also** 18 Pa.C.S.A. § 6105 (Persons not to possess, use, manufacture, control, sell or transfer firearms).

From the outset, R.A.B.-W.'s permanency plan was reunification. Father's objectives in furtherance of that plan was "to remain in contact with the Community Umbrella Agency ("CUA") worker and attend virtual and/or telephonic visits" with R.A.B.-W. Trial Court Opinion, 4/25/25, at 2 (citing N.T., 3/11/25, at 10).

On March 5, 2024, DHS filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and

(b). The evidentiary hearing was scheduled for April 2, 2024. After numerous continuances, the hearing occurred on March 11, 2025. R.A.B.-W.'s legal interests were represented during the hearing by Maureen Pie, Esquire, and her best interests were represented by the guardian *ad litem* ("GAL"), Scott Gessner, Esquire.

DHS presented the testimony of Rochelle Richards, who was the CUA caseworker from January of 2022, when R.A.B.-W.'s case opened, through June of 2024, when Ms. Richards left the CUA's employment. ***See*** N.T., 3/11/25, at 7-8. In addition, DHS introduced into evidence, and the court admitted, Father's criminal docket as well as R.A.B.-W.'s dependency record. ***See*** DHS Exhibits 1 & 2. Father testified on his own behalf *via* videoconference from State Correctional Institution – Houtzdale.

Ms. Richards explained that R.A.B.-W. has "significant emotional" needs because of the aforementioned traumatic incidences in her life. N.T., 3/11/25, at 14. As such, she received "trauma and individual therapy" throughout the underlying matter. ***See generally*** DHS Exhibit 2. R.A.B.-W.'s maternal aunt, who has remained her kinship care provider, is meeting her needs. ***See*** N.T., 3/11/25, at 13, 15.

With respect to Father's visits with R.A.B.-W., the trial court ordered that they shall be "virtual supervised visits at the child's discretion." Order of Adjudication and Disposition, 5/19/22, at 2. The record includes multiple permanency review orders indicating that Father's "virtual supervised visits"

are "per prison policy." Orders, 3/23/23, 6/22/23, 11/9/23. Ms. Richards testified that Father was "pretty consistent" with attending virtual visits from March of 2023, until May of 2023, for one hour per week. N.T., 3/11/25, at 10. Father did not attend any virtual visits after May of 2023, through the time that Ms. Richards left the CUA in June of 2024. *See id.* at 10-12. Further, Ms. Richards testified that, throughout 2024, R.A.B.-W. preferred not to have any virtual visits. *See id.* at 12.

By decree dated and entered on March 11, 2025, the court involuntarily terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b). Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

The trial court filed its Rule 1925(a) opinion on April 25, 2025, wherein it reasoned, in part, that Father's criminal sentence of 20 to 40 years' incarceration renders him incapable of providing for the essential parental care, control, or subsistence necessary for R.A.B.-W.'s physical and mental well-being. *See* Trial Court Opinion, 4/25/25, at 5.

On appeal, Father presents the following two issues for review:

1. Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights when such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1) and (2).

2. Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights without giving primary consideration to the effect the termination would have on the developmental, physical, and emotional

needs of the child as required by the Adoption Act, 23 Pa.C.S.A. § 2511(b).

Father's Brief at 1 (unpaginated).[2]

Our review of the involuntary termination decree

is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will.

*In re Adoption of C.M.*, 255 A.3d 343, 358-59 (Pa. 2021) (quotation marks, brackets, and citations omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis. This Court has explained:

Subsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination. In evaluating whether the petitioner proved grounds under § 2511(a), the trial court must focus on the parent's conduct and avoid using a "balancing or best interest approach." *Interest of L.W.*, 267 A.3d 517, 524 n.6 (Pa. Super. 2021). If the trial court determines the petitioner established grounds for termination under § 2511(a) by clear and convincing evidence, the court then must assess the petition under § 2511(b), which focuses on the child's needs and welfare.

_____

[2] The GAL filed a letter in this Court stating that he joins in DHS's appellee brief.

***In re M.E.***, 283 A.3d 820, 830 (Pa. Super. 2022) (some internal quotation marks and citations omitted). The moving party must establish the statutory grounds under both Section 2511(a) and (b) by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (citation omitted).

In this case, the trial court involuntarily terminated Father's parental rights pursuant to the following provisions of the Adoption Act:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any

efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (b).

We need only agree with any one subsection of Section 2511(a), along with Section 2511(b), to affirm the termination of parental rights. ***See In re Adoption of K.M.G.***, 219 A.3d 662, 672 (Pa. Super. 2019) (*en banc*) (citation omitted). In this case, we conclude that competent evidence supports the decree terminating Father's parental rights pursuant to Section 2511(a)(2) and (b).[3]

Pursuant to Section 2511(a)(2), the petitioning party must prove by clear and convincing evidence the following three elements to warrant termination: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In re Adoption of A.H.***, 247 A.3d 439, 443 (Pa. Super. 2021) (citation omitted).

Section 2511(a)(2) "emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being," especially "where disruption of the family has already

_____

[3] We make no determination with respect to whether competent evidence supports the decree pursuant to Section 2511(a)(1).

- 7 -

occurred and there is no reasonable prospect for reuniting it." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010) (citation and emphasis omitted).

In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court addressed the relevance of incarceration in termination decisions under Section 2511(a)(2). The Court held that "incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied." *Id.* at 828.

If a court finds that the parent's conduct warrants termination under Section 2511(a), it then proceeds to analyze Section 2511(b), which mandates that the "primary consideration" for a court in considering an involuntary termination petition is the child's "developmental, physical and emotional needs and welfare." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023) (quotation marks omitted); *see also* 23 Pa.C.S.A. § 2511(b). The child's bond with the parent, "plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." *K.T.*, 296 A.3d at 1109. Our Supreme Court emphasized that courts

> must consider whether, in the context of all these factors, the parental bond is "necessary and beneficial" to the child. *See* [*In*

- 8 -

*re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)] (courts "must examine the status of the bond to determine whether its termination would destroy existing, necessary and beneficial relationship") (quotation marks omitted). *See also Int. of M.E.*, 283 A.3d 820, 836–37 ([Pa. Super.] 2022) (To the extent there is a bond, the trial court must examine whether termination of parental rights will destroy a "necessary and beneficial relationship[.]")

*Id.*

Furthermore, in *In re T.S.M.*, 71 A.3d 251 (Pa. 2013), our Supreme Court stated that "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *Id.* at 268. The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The *T.S.M.* Court observed that, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

Finally, relevant to this appeal is the following holding by our Supreme Court:

Neither subsection (a) nor (b) requires a court to consider the reasonable efforts provided to a parent prior to termination of parental rights. Nevertheless, this Court has observed that the provision or absence of reasonable efforts may be relevant to a court's consideration of both the grounds for termination and the best interests of the child. *[In re Adoption of] S.E.G*., 901 A.2d [1017,] 1029 [Pa. 2006]. For example, as applicable to subsection (a)(2), a court may find an agency's lack of assistance to a parent relevant to whether a parent's incapacity

"cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2).

*In re D.C.D.*, 105 A.3d 662, 672 (Pa. 2014).

In this case, Father essentially presents one argument with respect to both issues on appeal. Specifically, Father argues that the trial court abused its discretion in terminating his parental rights under the statutory provisions alleged in the petition because the CUA failed to schedule virtual visits for him and R.A.B.-W. *See* Father's Brief at 8 (unpaginated). Therefore, he asserts that the CUA failed to provide "reasonable efforts to an incarcerated parent." *Id.* Father further asserts that a "child welfare agency cannot refuse reasonable efforts to an incarcerated parent and then point to the resulting erosion in the parental bond created by the agency as justification for the termination of parental rights." *Id.* For the reasons that follow, Father is not entitled to relief.

Contrary to Father's assertions, Ms. Richards testified that she indeed scheduled Father's virtual supervised visits, as follows.

> I would always make scheduled appointments [with the prison]. I would get . . . emails stating that they were confirmed, and then, [at] some point throughout the week, I would get an email [from the prison] saying that the visits were canceled or need to be rescheduled.

N.T., 3/11/25, at 11. Ms. Richards confirmed on direct examination that, for some of the virtual visits canceled by the prison, it was due to Father being placed in solitary confinement. *Seed.* at 16. Ms. Richards explained on cross-examination by Father's counsel that she never canceled a scheduled virtual

visit even when R.A.B.-W. did not want to attend. ***See id.*** at 25-26. Ms. Richards testified further on cross-examination:

> Q. And when did you stop making those [visits]?
>
> A. I never stopped. I just was unable to schedule. There would be no availability in [Father's prison] calendar. . . .
>
> . . .
>
> A. So, I couldn't schedule [the visits].

***Id.*** at 22-23.

We note that Ms. Richards testified she has no documentation indicating that virtual visits occurred with Father prior to March of 2023. ***See id.*** at 21-22. In addition, she testified she has no independent recollection as to whether a virtual visit occurred prior to March of 2023. ***See id.*** at 22. Nevertheless, we discern no abuse of discretion by the court insofar as it credited Ms. Richards' testimony that she never ceased efforts to schedule virtual visits. Her testimony reveals that the lack of visits was due to Father's unavailability at the prison. Thus, we reject Father's argument that the CUA failed to make reasonable efforts on Father's behalf.

> Moreover, we emphasize that,
>
> while 'sincere efforts to perform parental duties can preserve parental rights under subsection (a)(1), those same efforts may be insufficient to remedy parental incapacity under subsection (a)(2). 'Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities.'

***In re T.L.H.***, 336 A.3d 1069, 1086 (Pa. Super. 2025) (citing ***In re Z.P.***, 994 A.2d at 1117-1118). Assuming *arguendo* that Father desired regular virtual

visits with R.A.B.-W. and the CUA had failed to schedule them, it would not negate Father's present and future parental incapacity to provide for his daughter's essential needs under Section 2511(a)(2) due to the length of his criminal sentence. *See Interest of J.B.*, 331 A.3d 619, at *7 (Pa. Super. 2024) (unpublished memorandum) ("[W]here a parent's incapacity is due to a lengthy incarceration, and reunification is not a realistic goal, an orphans' court does not abuse its discretion in terminating parental rights under Section 2511(a)(2) and (b), even where an agency failed to provide adequate visitation to the incarcerated parent and that failure had a negative effect on the parental bond.") (citing *D.C.D.*, 105 A.3d at 675, 677).

This case is distinguishable from *In re T.L.H.*, *supra*, wherein a panel of this Court concluded that the trial court abused its discretion in terminating the parental rights of the father, who was incarcerated for a parole violation, pursuant to Section 2511(a)(2). At the time of the child's adjudication, the father was expected to be released from prison in the near future. The agency required him to participate in services for reunification purposes only upon his release, including, but not limited to, supervised visitation. However, the father was ultimately sentenced to a minimum term of incarceration of approximately two years and five months, and a maximum term of three years and four months, but the agency never modified its directive that "progress towards reunification shall commence upon" the father's release from prison. *T.L.H.*, 336 A.3d at 1090 (citation to record omitted).

As such, the agency in *T.L.H.* denied the father's requests for virtual visits and ultimately filed a petition for the involuntary termination of his parental rights. By the time the hearing was held, three months remained on the father's minimum sentence, and there was evidence that he would be released. Based on the specific facts in that case, this Court concluded that the father's "capacity to maintain a meaningful relationship with" the child "was hindered" by the agency's actions in restricting his contact with the child. *Id.*; *see also D.C.D.*, 105 A.3d at 672 ("in a situation involving a strong bond between parent and child prior to incarceration and a short term of incarceration, that a child welfare agency cannot refuse reasonable efforts to an incarcerated parent and then point to the resulting erosion in the parental bond created by the agency as justification for termination of parental rights.").

In contrast to *T.L.H.*, Father's minimum term of incarceration in this case will be met in January of 2039, when R.A.B.-W. will be thirty-three years old. *See* N.T., 3/11/25, at 28. Thus, we discern no abuse of discretion by the court in terminating Father's parental rights under Section 2511(a)(2). Indeed, Father's lengthy sentence of incarceration has caused R.A.B.-W. to be without essential parental care, control, or subsistence since January of 2019, and Father's incapacity cannot and will not be remedied for the remainder of her childhood. *See S.P.*, 47 A.3d at 828.

Turning to Father's issue with respect to Section 2511(b), he again bases it on the flawed premise that the CUA "prevent[ed] virtual visitation with his daughter." Father's Brief at 15 (unpaginated). Father asserts that "any lack of contact with the child resulted from the agency's denials — not neglect or disinterest" by him. *Id.* Father's arguments fail for the reasons discussed above, namely, that the CUA never stopped making an effort to schedule virtual visits with R.A.B.-W.

We discern no abuse of discretion by the court in terminating Father's parental rights pursuant to Section 2511(b) inasmuch as Ms. Richards testified that R.A.B.-W. has not demonstrated any sign of "irreparable harm" from not having contact with Father since May of 2023. *See* N.T., 3/11/25, at 14-15. Ms. Richards also emphasized that, to her knowledge, Father never sent gifts, cards, or letters to R.A.B.-W. *See id.* at 19. R.A.B.-W. was nine years old at the time of the subject proceeding, and Ms. Richards testified that she is "doing well" in her maternal aunt's pre-adoptive home. *Id.* at 15. In fact, she confirmed that R.A.B.-W. shares a parent-child bond with her maternal aunt, and "[s]he doesn't understand that she's not adopted yet." *Id.* at 15-16. Ms. Richards clarified that R.A.B.-W. "thinks she's already adopted." *Id.* at 16. Based upon the relevant law as applied to the sustainable facts in this case, we conclude without hesitation that the court did not abuse its discretion in terminating Father's parental rights pursuant to Section 2511(b). The only necessary and beneficial relationship possessed by R.A.B.-W. on this record is

with her maternal aunt. *See K.T.*, 296 A.3d at 1109. Therefore, we affirm the decree pursuant to Section 2511(a)(2) and (b).

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/1/2025